UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF EVANSTON and THE UNITED STATES CONFERENCE OF MAYORS,<br><br>      *Plaintiffs*,<br> v.<br><br>JEFFERSON BEAUREGARD SESSIONS III, in his official capacity as Attorney General of the United States,<br><br>      *Defendant*. | Case No. 1:18-cv-04853<br><br>Hon. Harry D. Leinenweber |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

**Introduction**

In *City of Chicago v. Sessions*,[1] this Court entered a nationwide preliminary injunction regarding the "notice" and "access" conditions that the Department of Justice ("DOJ" or "Department") had indicated it intended to impose on the City of Chicago's FY 2017 Byrne JAG award. The Conference of Mayors ("Conference")—an organization whose name indicates that it represents municipal leaders but not the actual cities that those mayors lead—participated in those proceedings as an *amicus*, arguing in favor of the nationwide relief that the Court ultimately ordered. And when the Department appealed this Court's preliminary injunction and sought to stay its nationwide effect, the Conference—having previously participated as an *amicus*—took a second bite at the apple by moving to intervene, again expressing its views to this Court as to the propriety of nationwide preliminary relief.

Although the Seventh Circuit affirmed this Court's grant of a preliminary injunction, the panel divided regarding the scope of relief. The *en banc* Seventh Circuit subsequently stayed the nationwide scope of this Court's injunction and granted further review of that question.

Dissatisfied with the Seventh Circuit's stay, the Conference now takes a third bite at the apple. In its motion for a temporary restraining order and preliminary injunction,[2] the Conference asks this Court to impose what would effectively be the same relief that the Seventh Circuit had just stayed: "a program-wide temporary restraining order and preliminary injunction."[3] But substituting the phrase "program-wide" for "nation-wide" would not address any of the concerns animating the Seventh Circuit's stay, including those set forth in Judge Manion's lengthy dissent-in-part in the *Chicago* litigation.[4] Accordingly, insofar as the nationwide injunction in *Chicago* is ultimately vacated by the

---

[1] No. 17-cv-5720, --- F. Supp. 3d ---, 2018 WL 3608564 (N.D. Ill. July 27, 2018).
[2] ECF No. 10 ("PI Motion"). Because the standards for a temporary restraining order and preliminary injunction are essentially the same, Defendant will refer in this brief to Plaintiffs' request as one for a preliminary injunction.
[3] PI Motion at 15 (Conclusion).
[4] *City of Chicago v. Sessions*, 888 F.3d 272, 293-300 (7th Cir. 2018) ("Manion dissent").

1

Seventh Circuit, the *maximum* relief the Conference would be entitled to here is an injunction limited to redressing the cognizable injuries of its own members.

Moreover, the Conference is not even entitled to that, because it has utterly failed to provide adequate evidence that it has associational standing to seek injunctive relief on behalf of its members. The Conference submits a single declaration from itself that merely describes, in the broadest strokes, how some cities allegedly represented by the Conference have policies that may conflict with the FY 2017 Byrne JAG award conditions. In fact, the Conference's actual members are not even the jurisdictions subject to the challenged conditions, but rather mayors. And yet the Conference has failed to provide any evidence that its mayors possess authority under their cities' laws to file a lawsuit on behalf of their cities. Furthermore, the cities of the Conference's members have conflicting policies and interests, additionally foreclosing the Conference from establishing standing in a representational capacity. For example, cities in Texas are *required under state law* to comply with the conditions, while other cities choose to cooperate with ICE. Likewise, individualized participation of cities is required here, especially given that some cities have filed their own lawsuits and thus will be barred by res judicata from obtaining relief in two separate cases. Yet the only individualized proof submitted in this lawsuit comes from co-Plaintiff the City of Evanston. Evanston, however, lacks standing to sue because it is merely a subrecipient of Chicago's FY 2017 Byrne JAG award and therefore its rights and obligations are derivative of Chicago's and can be determined only in the suit brought by Chicago.

For these reasons, Plaintiffs fail to demonstrate standing, much less why they are entitled to a preliminary injunction. Shortly after Plaintiffs filed their motion, however, circumstances changed in a manner that further undermines their request for relief when this Court entered—and then immediately stayed—a permanent, nationwide injunction regarding all three challenged FY 2017 Byrne JAG award conditions.[5] That stay does not, of course, preclude further litigation regarding the

---

5    *Chicago v. Sessions*, 2018 WL 3608564, at *14.

2

FY 2017 Byrne JAG challenged conditions; to the contrary, lawsuits have taken place or are pending in multiple other venues, demonstrating that cities are capable of litigating the application of these conditions to their particular jurisdictions based on the circumstances on the ground in those jurisdictions. What the stay did, however, was evaluate the alleged necessity of *nationwide* relief, with this Court ultimately concluding that it would be appropriate to stay that broad relief pending appeal. The "program-wide" preliminary injunction that Plaintiffs seek here would undermine that stay, creating precisely the type of "judicial whiplash" that this Court had sought to avoid in entering its stay. For these reasons, as set forth in more detail below, this Court should deny Plaintiffs' motion.

## Argument

### I. Plaintiffs Lack Standing.

Before this Court can even evaluate Plaintiffs' claims for a preliminary injunction, it must first determine whether Plaintiffs have standing. While this Court had to accept the Conference's factual allegations as true when assessing its standing to *intervene* in Chicago's lawsuit, *see City of Chicago v. Sessions*, Case No. 17 C 5720, 2017 WL 5499167, at *5 (N.D. Ill. Nov. 16, 2017) (citing *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)), the Conference must demonstrate its standing through "competent proof" where, as here, its standing as a plaintiff is challenged, *see Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Plaintiffs fail to provide "competent proof," which requires "a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Id.*

### A. The City of Evanston Lacks Standing.

In order to have standing, Evanston must demonstrate the "triad of injury in fact, causation, and redressability[, which] constitutes the core of Article III's case-or-controversy requirement." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998) (footnote omitted). And to demonstrate injury-in-fact, Evanston must identify a "concrete and particularized" injury that is

3

"actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). It cannot do so.

Because Evanston would receive its FY 2017 Byrne JAG funds only through a subaward from the City of Chicago, *see* PI Motion, Ex. 2, Decl. of Louis Gergits, ECF No. 10-3 ("Gergits Decl.") ¶ 4; Decl. of Tracey Trautman ("Trautman Decl.") ¶¶ 2-3, attached hereto as Ex. A, Evanston's subaward would be subject, *mutatis mutandis*, to the challenged FY 2017 award conditions only to the extent that those conditions would apply to the FY 2017 Byrne JAG award to Chicago itself. *See* Trautman Decl. ¶ 4-5. So long as the permanent injunction as to Chicago remains in place, none of the challenged FY 2017 Byrne JAG award conditions would be enforced as to Evanston. *Id.* ¶ 5. And even if Chicago's permanent injunction were reversed on appeal, Evanston would lack any basis to challenge the conditions itself, because it would be bound by the judgment against Chicago. In short, a subrecipient cannot itself challenge grant conditions because it is bound by the terms and conditions that the actual grant recipient chooses to accept or fails to successfully challenge.

### B. The Conference of Mayors Lacks Standing.

Where an association attempts to bring suit in a representative capacity, it will have standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Conference fails to meet these requirements.

**1.** The Conference cannot meet the first prong of the *Hunt* test because it has failed to present any specific allegations that its members would otherwise have standing to sue in their own right. This is so for several reasons.

*First*, the Conference's declaration merely notes that "many Conference members [have] adopted welcoming city policies and similar policies." Cochran Decl. ¶ 36. That declaration fails to

4

describe what those policies actually are, how many cities may have adopted such policies, and how those policies may conflict with the challenged FY 2017 Byrne JAG award conditions, much less say anything at all about policies that may be "similar"—whatever that means.[6] Moreover, many cities receive funds only as sub-grantees, not grantees in their own right.

*Second*, the Conference's members are not actually cities, but merely mayors. Yet the Conference has not presented any evidence that even a single member has the authority or is authorized to file this lawsuit. And there is good reason to doubt that the mayors alone have authority under their cities' laws to authorize or file a suit on behalf of their cities.[7] And there is even more reason to doubt that the mayors (much less the cities) have authorized the Conference to bring litigation on their behalf that would bind them under a final judgment, win *or lose*—especially since some cities have brought their own, separate lawsuits.[8]

*Third*, many members would not have standing even if authorized to sue on behalf of their

---

[6] To be sure, the Conference identifies six example cities, *see* Cochran Decl. ¶ 36 & n.3, but three of those cities (Los Angeles, New York, and Philadelphia) have already brought their own, separate lawsuits. Plaintiff merely cites Gary, Indiana Ordinance No. 9100, about which the city is currently facing litigation from the State of Indiana and others for violating sections of the Indiana Code prohibiting governmental bodies from adopting non-cooperation policies regarding immigration-law information and enforcement. *See* https://www.nwitimes.com/news/local/crime-and-courts/state-of-indiana-intervenes-as-plaintiff-in-lawsuit-against-gary/article_100d4143-29e6-558f-ad9e-6da10fe3317b.html. Plaintiffs provide a link to a New Orleans policy, but that policy expressly requires compliance with Section 1373. https://www.nola.gov/getattachment/NOPD/NOPD-Consent-Decree/Chapter-41-6-1-Immigration-Status-approval.pdf/. And the broken link that Plaintiffs provide for the City of Providence's policy is to a think tank. https://www.ilrc.org/sites/default/files/resources/providence.

[7] For example, Milwaukee, Wisconsin (a Conference member, *see* Cochran Decl. Ex. 3) has a City Attorney who is responsible for conducting "all the law business of the corporation and of the departments thereof . . . ." Milwaukee, Wisc., Charter § 3-03.1(a), *available at* https://city.milwaukee.gov/ImageLibrary/Groups/ccClerk/Ordinances/CH3.pdf. The City Attorney's authority to participate in lawsuits on behalf of the city, however, arguably requires city council authorization. *See id.*

[8] This Court previously rejected this argument, citing *Chicago-Midwest Meat Association v. City of Evanston* for the proposition that stare decisis would bind any members of the association not otherwise bound by the judgment. *See Chicago v. Sessions*, No. 17-cv-5720, 2017 WL 5499167 at *5 (N.D. Ill. Nov. 16, 2017) (citing *Chicago-Midwest Meat Ass'n*, 589 F.2d 278, 281 n.3 (7th Cir. 1978)). Even if that were a correct statement of law, it would not apply where, as here, members of the Conference represent cities in other circuits, *see* Cochran Decl. Ex. 3, which would not be bound by any stare decisis effect of a Seventh Circuit decision.

cities. As further discussed below under the second prong, certain jurisdictions (including every jurisdiction in Texas) are already required to comply with the challenged conditions, and other jurisdictions will choose to comply with those conditions. None of those cities could establish that the conditions will cause them any injury.

**2.** The Conference fails to meet the second prong of the *Hunt* test because the interests that the Conference seeks to protect in this lawsuit are not germane to the organization's purpose. *See Hunt*, 432 U.S. at 343. Again, this is so for multiple reasons.

*First,* not only does the Conference represent *mayors, not cities*, but nothing in the Conference's constitution indicates that a purpose of its representation of mayors is to challenge Executive Branch action. *See* Cochran Decl. Ex. 1, Constitution of U.S. Conference of Mayors, Art. I: name and Purpose, ECF No. 10-2 (Constitution Art. I: Name and Purpose) at 1.[9] At most, the Conference's declaration vaguely notes that "roles" include "strengthening federal-city relationships" and "ensuring that federal policy meets urban needs." Cochran Decl. ¶ 7. In that regard, the Conference's purpose is *consistent* with the challenged FY 2017 Byrne JAG award conditions, all of which attempt to strengthen federal-city relationships through the provision of access to and the sharing of information with federal law enforcement officials.

*Second,* there are profound conflicts of interest between the Conference and some of its members and the cities they serve. *See Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1381 (7th Cir. 1987). A nationwide injunction will injure those cities that do not object to, and indeed support, the enforcement of the challenged FY 2017 Byrne JAG award

---

[9] One of the Conference's purposes is "the safeguarding of the interests, rights and privileges of municipalities as they may be affected by legislation." *Id.* That purpose—which appears to authorize lobbying activities—does not speak to any effect that *Executive Branch* action may have on Conference members. It certainly does not speak to whether the Conference has authority to sue on behalf of its members in a manner that might affect certain members' obligations to and relationships with the Executive Branch on matters that are essentially contractual in nature. *Cf., e.g., McGee v. Mathis*, 71 U.S. (4 Wall.) 143, 155 (1866) (a "grant by the United States . . . constitute[s] a contract"); *see also, e.g., United States v. N. Pac. Ry.*, 256 U.S. 51, 63-64 (1921).

conditions. Plaintiffs argue to the contrary, *see* PI Motion ¶ 38, but ignore not only the conflicting policy positions of various cities, but also that uncertainty in the state of the law as a result of this Court's preliminary injunction in the *Chicago* litigation resulted in a delay in the issuance of FY 2017 Byrne JAG award documents. The issuance of those FY 2017 award documents began in earnest once the Seventh Circuit stayed the nationwide effect of this Court's preliminary injunction, thus allowing the Department to enforce the notice and access provisions outside of the Seventh Circuit. *See id.* ¶ 23.[10] A new injunction for the cities of the Conference members would again result in confusion regarding the state of the law while Defendant pursues any appeals, again creating potential uncertainty for those jurisdictions that do not object to the challenged conditions. Such a "direct, detrimental effect to some members' interests" precludes the Conference from having standing in this lawsuit. *Retired Chicago Police Ass'n*, 76 F.3d at 864.

The Conference's evidentiary submissions further underscore these conflicts of interest. For example, Plaintiffs cite and attach the FY 2017 Byrne JAG award document for the City of Austin. *See* Cochran Decl. ¶ 42 & Cochran Decl., Ex. 4, ECF No. 10-2. Along with every other Texas city, however, Austin is required by law to provide ICE with advance notice of release, to provide ICE with access to its jails, and to cooperate with federal immigration officials generally, including through the sharing of immigration-related information. *See* Tex. Code of Crim. Proc. Ann. Art. 2.251(a)(1); Tex. Government Code Ann. § 752.053. Austin (and the 26 other cities served by Conference mayors in Texas, *see* Cochran Decl., Ex. 3, ECF No. 10-2 at 15) therefore is precluded from challenging the

---

[10] Plaintiffs assert that "the Attorney General recently acted to impose the [notice and access] conditions even upon other cities in the Seventh Circuit," PI Motion ¶ 24, and cite what purports to be the FY 2017 Byrne JAG award document for Madison, Wisconsin, which Plaintiffs claim "contains each of the challenged conditions." Cochran Decl. ¶ 46. Plaintiffs' assertion is misleading, as the Madison award contained a "SPECIAL NOTICE" making clear that, due to "pending litigation," the Department "at this time . . . will not enforce" the notice and access conditions "in awards made to applications located within [the Seventh Circuit]." Trautman Decl. ¶ 6 & Ex. 2 attached thereto.

conditions. Further, other cities served by Conference mayors choose to cooperate with ICE as a matter of policy through its 287(g) program[11] and, as ICE's partners, presumably would not be interested in participating in this lawsuit.

The Conference never mentions cities that either are required by state or local law to cooperate with ICE or as a matter of policy find that cooperation with ICE is appropriate; instead, its motion glosses over the issue by noting that the Conference has passed various resolutions critical of federal immigration policies. Even here, however, the Conference's evidentiary support is lacking: It fails to identify which or how many members voted for these resolutions out of its membership of over 1,400 mayors, noting instead that the resolutions passed with a majority of "Conference members present." *See* Cochran Decl. ¶¶ 5, 9-23.[12] More fundamentally, while the Conference's declaration discusses the passage of these non-binding resolutions, it is completely silent on whether and, if so, how the Conference was *authorized to litigate* on behalf of its member mayors (much less the cities they serve). Under these circumstances, the direct detriment that this lawsuit would cause to some Conference members forecloses representational standing absent evidence (not presented here) that "the litigation was properly authorized." *Retired Police Ass'n*, 76 F.3d at 865-66 (observing that "where it is unclear whether an association's members support the litigation, the association cannot assert associational standing absent the documented support of a majority of its members" (citing *Nat'l Collegiate Athletic Ass'n v. Califano*, 622 F.2d 1382, 1391–92 (10th Cir. 1980))).

---

[11] That program, which is named for Section 287(g) of the Immigration and Nationality Act, authorizes the Director of ICE to enter into agreements with state and local law enforcement agencies, permitting designated officers to perform immigration law enforcement functions. *See* Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act, https://www.ice.gov/287g. The Police Departments for the City of Mesa, Arizona, and Las Vegas, Nevada, have entered into such agreements with ICE. *See* Memorandum of Agreement, Appendix D, Standard Operating Procedure, https://www.ice.gov/doclib/287gMOA/r_287gmesapolicedept.pdf (Mesa), https://www.ice.gov/doclib/287gMOA/r_287glasvegaspd.pdf (Las Vegas).

[12] The Conference notes there were "over 250 mayors" present at the 2017 annual meeting and "[m]ore than 240 mayors" present at the 2018 annual meeting at which these resolutions passed. Cochran Decl. ¶¶ 10, 20. These numbers represent less than one-fifth of the Conference's 1,400-mayor membership. *See id.* ¶ 5.

**3.** Finally, the Conference fails to satisfy the third prong of the *Hunt* test because its claims in this lawsuit require the participation of individual municipalities. As noted above, some municipalities have code provisions that require express authorization to litigate. And there clearly is no impediment to individual municipalities bringing lawsuits challenging the FY 2017 Byrne JAG award conditions; Chicago, Philadelphia, San Francisco, Los Angeles, and New York have all brought individual lawsuits (as have Evanston in this case and a handful of states in lawsuits in this and other courts). Indeed, the existence of these separate suits underscores the need for individual participation, because these cities are subject to unique res judicata defenses. *See Simer v. Rios*, 661 F.2d 655, 682 (7th Cir. 1981) (representational standing inappropriate where individualized proof is necessary to adjudicate claim). Moreover, the separate suits demonstrate that cities are able to vindicate their interests through litigation. And that is how it should be: The Conference does not claim that all of its members have "welcoming" or "similar" policies, or even that policies are identical across the jurisdictions that it purports to represent. A court in the Northern District of California recognized as much in denying the City of Los Angeles's motion to intervene in the City of San Francisco's Byrne JAG challenge, noting that "Los Angeles indicated, understandably, that its relevant policies are different than those in San Francisco. I assume that would be true for virtually every jurisdiction." *City and County of San Francisco v. Sessions*, No. 17-cv-04642-WHO, slip op. at 2 (N.D. Cal. Sept. 11, 2017), attached hereto as Ex. B. In denying Los Angeles's intervention motion, the court recognized that "the legal analysis for similar cases will overlap, [but] they may not be identical because of the difference in the policies and practices of each governmental entity." *Id.*[13] That observation is equally applicable here: Whether the challenged FY 2017 Byrne JAG award conditions conflict with particular municipal policies and

---

[13] The court also observed that the motion "upends established venue and forum rules" which, "[b]y their nature . . . result in different lower courts deciding similar legal issues, sometimes with divergent results." The court viewed those differing results as being "appropriately reconciled by higher courts." *Id.* The injunction that the Conference seeks here would deprive other courts from rendering their opinions based on the unique facts of individual lawsuits based on local policies.

whether any such conflict gives rise to irreparable harm necessary to obtain injunctive relief is a matter of individualized proof, thus precluding representational standing.

\* \* \*

Plaintiffs lack standing to bring this lawsuit. If the Court disagrees based on the current record, the issues Defendant has identified at minimum raise doubts regarding the Conference's ability to establish representative standing, and the Court should permit expedited discovery on these threshold jurisdictional issues so that it can resolve those doubts.

## II. Plaintiffs Are Not Entitled to a Preliminary Injunction.

"An equitable, interlocutory form of relief, 'a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 965 (7th Cir. 2018) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). Plaintiffs are not entitled to that relief. Even if they could ultimately prevail on the merits—a proposition that Defendant continues to dispute— they cannot establish irreparable injury. Moreover, the equities and the public interest also tip in Defendant's favor, as the blunderbuss relief that Plaintiffs request is broader than necessary to redress Plaintiffs' own alleged injuries, would once again create uncertainty regarding the administration of the Byrne JAG program, and would create the type of "judicial whiplash" that this Court previously warned against. *Chicago v. Sessions*, 2018 WL 3608524, at \*18.

### A. Plaintiffs Are Not Likely to Prevail on the Merits.

In addition to reiterating and preserving arguments made previously before this Court and the Seventh Circuit in *Chicago v. Sessions*, Defendant emphasizes one point that Defendant previously explained but that so far has largely been overlooked in this series of litigation. In § 10102, Congress instructed that the powers of the Assistant Attorney General for the Office of Justice Program ("AAG") include both "'placing special conditions on all grants, *and determining priority purposes for*

10

*formula grants*." 34 U.S.C. § 10102(a)(6) (emphasis added). The Seventh Circuit explained why it does not believe the statutory power *to impose special conditions* authorized the notice and access conditions. *See City of Chicago v. Sessions,* 888 F.3d at 285 (addressing why conditions cannot be imposed on formula grants, as opposed to formula grants); *id.* at 285 n.2 (considering but not resolving whether "'special conditions' is a term of art referring to conditions for high-risk grantees"); *id.* at 287 (contrasting "special conditions" language with "reasonable conditions" language in VAWA); *id.* at 295 (Manion, J., dissenting) (agreeing with majority that phrase "*including placing special conditions on all grants*" cannot justify conditions at issue here) (italics in original). But the Court paid little heed to AAG's independent authority to "determin[e] priority purposes" for the Byrne JAG grant.[14]

In keeping with the canon against surplusage, *see United States v. Wagner*, 29 F.3d 264, 266 (7th Cir. 1994), § 10102(a)(6) conveys independent authority for the AAG to "determin[e] priority purposes for formula grants." Congress's express formulation plainly indicates an intention to allow the AAG to exercise discretion in determining the priorities in awarding formula grants in the way grantmakers have inherent authority and discretion over non-formula/discretionary grants. *See* https://www.grants.gov/learn-grants/grant-terminology.html (providing definitions for grant terms). Such discretion must, if this language is to be afforded meaningful legal effect, encompass at least the minimal authority to (1) articulate broad priorities for a given Fiscal Year's grant program; (2) include, on program application forms, inquiries regarding the designated priority purpose; and (3) impose eligibility conditions reflecting the priority purpose. In other words, under the statute's plain reading, the authority to "determine priority purposes" includes the authority to prioritize federal law-enforcement grant monies for those state and local jurisdictions that assist in furthering relevant

---

[14] The Seventh Circuit did conclude that the powers bestowed upon the AAG in § 10102(a)(6) "merely exemplified the type of other powers that the Assistant Attorney General may possess by delegation elsewhere." *Id.* at 285. But that reading renders this part of the statute meaningless, as the Seventh Circuit did not identify any other place in the relevant statutes where the "priority purpose" power had been or could be authorized or delegated to the AAG.

11

federal law-enforcement-related purposes.[15]

### B. Plaintiffs Cannot Meet the Threshold Requirement of Demonstrating Irreparable Injury.

Plaintiffs also cannot meet the threshold requirements for a preliminary injunction because they cannot demonstrate that they will suffer irreparable harm. Evanston clearly cannot demonstrate irreparable harm. *See supra*, Part I.A. Nor can the Conference's members claim that their cities will suffer irreparable injury, as the Conference failed to submit declarations from its individual members (save Evanston) identifying relevant city policies. That stands in contrast to the evidence submitted by the City of Chicago, which included two separate declarations from Chicago Police Department officials. *See* Declarations, *Chicago v. Sessions*, No. 1:17-cv-5720 (N.D. Ill.), ECF Nos. 24, 25.

The Conference offers nothing of the kind here; instead, it provides a declaration that describes in the vaguest of terms the policies of some cities that it purports to represent. Plaintiffs' argument that they "face a Hobson's choice" or must "acquiesc[e]" to those conditions, PI Motion at 12 ¶ 34, therefore rings hollow: The Conference fails even to identify the cities that will face this choice or otherwise acknowledge that some cities would willingly accept the challenged FY 2017 Byrne JAG award conditions.[16] Because the Conference's declaration regarding irreparable injury is entirely speculative, neither the Conference nor its members have demonstrated irreparable injury. *See Ditton v. Rusch*, No. 14 C 3260, 2014 WL 4435928, at *3 (N.D. Ill. Sept. 9, 2014) ("The threat of irreparable injury necessary to justify the extraordinary remedy of preliminary injunctive relief must be 'real,'

---

[15] Because states and localities would decline to participate in—and thus, effectively annul—the Byrne JAG Program were this authority invoked to impose unreasonable conditions, any arguable risk of overreach that might otherwise inhere in utilizing the "priority purpose" authority has a built-in structural check.

[16] Plaintiffs similarly assert that "[a] constitutional violation is often sufficient to establish irreparable harm as a matter of law." PI Motion at 11 ¶ 33. But an agency's lack of statutory authority does not render its actions unconstitutional. *See Dalton v. Specter*, 511 U.S. 462, 471-74 (1994) ("claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims"). And besides, even for constitutional claims, a party seeking preliminary relief must still "indicate that a particular constitutional interest is either threatened or in fact being impaired." *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 49 (D.D.C. 2013) (citation omitted). By failing to identify individual city policies, the Conference cannot show that a constitutional interest is being threatened or impaired as to any particular city.

'substantial,' and 'immediate,' not speculative or conjectural.") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). That failure dooms Plaintiffs' request for preliminary injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (plaintiffs seeking preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction"); *Girl Scouts of Manitou Council*, 549 F.3d at 1086 (explaining that a preliminary injunction must be denied if the moving party fails to establish threshold requirements, including irreparable harm); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 749 (N.D. Ill. 2010) (courts "should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff" (citation omitted))

### C. The Balance of the Equities and the Public Interest Tip in Defendant's Favor.

Plaintiffs must also establish "that the balance of the equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Similar factors would apply if this Court were to view Plaintiffs' motion through the rubric of its decision to grant a stay of the *Chicago* permanent injunction. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (applying four-factor test, including "whether [the] issuance of the stay will substantially injure the other parties interested in the proceeding [and] where the public interest lies"). Notwithstanding any merger of these factors in suits against the Federal Government, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), Plaintiffs still bear the burden of demonstrating that the factors tip in their favor. *See Chicago v. Sessions*, 888 F.3d at 294 n.2 (Manion, J. concurring in part and dissenting in part) ("*Winter* articulates four requirements, each of which must be satisfied as articulated.") (citing *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009)). Plaintiffs fail to make that showing.

We have already explained why an *actual* nationwide injunction is legally improper, and this Court has already recognized that any such injunction at least should be stayed pending appeal in light of the Seventh Circuit's *en banc* consideration of the issue. Of course, none of that is remotely affected by the Conference's attempt to re-label their nationwide injunction as a "program-wide" injunction.

13

Instead, the key question here is whether the equitable balance is materially affected if the injunction extends "only" to the "imposition of the three conditions upon Evanston and any other Conference member that has applied for, or been awarded, Byrne JAG funds for FY 2017 and beyond." PI Motion ¶ 40. And the answer is plainly no.

For starters, under no circumstances should this Court issue any injunction "beyond" FY 2017; the deadline for prospective applicants for awards under the FY 2018 Byrne JAG program has not yet run, and no award documents have therefore been issued under that program. As for the FY 2017 program, we have already explained that Evanston has no need for an injunction, and that the Conference has failed to identify any other cities served by its members who will suffer injury through the imposition of the challenged FY 2017 Byrne JAG award conditions, much less identify what those specific injuries would be. Any injunction thus must be limited to particular cities that make an adequate factual showing of irreparable harm as to them, because the Conference has failed to demonstrate why "Conference-wide" relief is appropriate or necessary. Such relief would also be burdensome to the Department, which may once again be forced to delay the processing of FY 2017 Byrne JAG awards while the legal question of whether it can apply the challenged FY 2017 award conditions is resolved. Many cities served by Conference members have no objection to the imposition of those conditions; in fact, as of August 2, 2018, 34 cities identified on the Conference's list of "members" that were allocated 2017 Byrne JAG Funds have already accepted their FY 2017 Byrne AJG awards. Trautman Decl. ¶ 7. The injunction the Conference is requesting would provide unnecessary relief to entities that are not seeking or would not benefit from that relief, would unduly burden the Department, and would harm municipalities reliant on FY 2017 Byrne JAG award funds by subjecting them to "judicial whiplash."

Moreover, even if there were cities that had made an adequate factual showing of irreparable harm from the challenged conditions, granting a preliminary injunction that benefits such cities, even

though most of them have declined to bring their own individual lawsuits, would potentially recreate the improper "one-way-ratchet" that the *en banc* Seventh Circuit sought to prevent when it stayed the nationwide injunction in *Chicago*. *See Chicago v. Sessions*, 888 F.3d at 298 (Manion, J., concurring in part and dissenting in part). In particular, the cities benefit if the Conference prevails, but it is far from clear that the cities would concede that they are bound if the Conference loses, precisely because it is dubious that every mayor has authority to sue on his or her city's behalf and in fact authorized the Conference to file suit for the city. Unless the cities themselves are bound by the result of this litigation, win or lose, an injunction on their putative behalf presents this same equitable problem as a nationwide injunction. That is especially so with respect to cities outside the Seventh Circuit which will not be bound by its decision as a matter of precedent, and it is particularly problematic as to cities (such as Chicago, Philadelphia, San Francisco, Los Angeles, and New York) that have filed their own lawsuits and yet would potentially gain a second bite at the apple here even if they lose there.

None of this analysis changes if Plaintiffs' motion were recast as one seeking relief from the Court's stay of its permanent injunction in the *Chicago* litigation. Even setting aside the impropriety of modifying a stay entered in one case through an order in a different case, the Court's analysis turned in part on the individualized nature of Chicago's claim, noting that "Chicago will not be directly affected by the stay," *Chicago v. Sessions*, 2018 WL 3608564, at *18. The Conference, however, has not presented any specific evidence demonstrating that particular members will be injured by a stay (or by a decision of this Court not to grant an injunction).

## Conclusion

This Court should deny Plaintiffs' request for preliminary injunctive relief in whole, or at least as to any cities as to whom the Conference has failed to demonstrate cognizable injury. At a minimum, this Court should immediately stay any preliminary relief that extends more broadly.

15

DATED:  August 3, 2018	Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

JOHN R. TYLER
Assistant Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 514-3374
Fax: (202) 616-8460
E-Mail:   brad.rosenberg@usdoj.gov

*Counsel for Defendant*