**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CITY OF EVANSTON and THE UNITED STATES CONFERENCE OF MAYORS,**<br><br>          **Plaintiffs,**<br><br>          **v.**<br><br>**JEFFERSON BEAUREGARD SESSIONS III, in his Official Capacity as Attorney General of the United States,**<br><br>          **Defendant.** | **Case No. 18 C 4853**<br><br>**Judge Harry D. Leinenweber** |

## ORDER

The City of Evanston and the U.S. Conference of Mayors seek a preliminary injunction enjoining the Attorney General from attaching three Conditions to funds under the Edward Byrne Memorial Justice Assistance Grant Program. As set forth herein, the Court finds that both Plaintiffs have standing to pursue their claims and, further, are entitled to preliminary injunctive relief. The Court accordingly enters an injunction enjoining the Attorney General from attaching the three challenged Conditions to grants awarded to Evanston and to any Conference member who faces the Attorney General's fast-approaching "accept or decline" deadlines. However, out of deference to the court of appeals and its pending *en banc* rehearing concerning the nationwide scope of the preliminary injunction in this Court's related case, *City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017), the Court stays its injunction as to the Conference.

**STATEMENT**

This case presents the same issues this Court has twice ruled upon in a related case. *See generally City of Chicago v. Sessions*, No. 17 C 5720, 2018 WL 3608564 (N.D. Ill. July 27, 2018); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933. For the sake of brevity, this Order incorporates the facts laid out in those opinions.

Before the Court now is a Motion for a Temporary Restraining Order and a Preliminary Injunction brought by the City of Evanston and the U.S. Conference of Mayors. Those Plaintiffs ask the Court to enjoin the Attorney General's attachment of three Conditions to the funds provided by the Byrne JAG grant which lies at the heart of both this dispute and the related case. This Court and others have referred to these three as the Notice, Access, and Compliance Conditions, respectively. In the *Chicago v. Sessions* case, as the litigants well know, the Seventh Circuit affirmed this Court's preliminary, nationwide injunction against the first two Conditions. Thereafter, the court of appeals voted *en banc* to vacate and rehear only the nationwide aspect of the injunction. In so doing, the *en banc* court also stayed this Court's preliminary injunction as to all areas of the country beyond Chicago. While that rehearing was pending, this Court entered a permanent injunction enjoining the imposition of not only the first two Conditions contemplated by the preliminary ruling, but also the third and final Condition given the Supreme Court's intervening ruling in *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). Out of deference to the Seventh Circuit's pending rehearing and respect for judicial economy, this Court stayed its permanent injunction, as the higher court had preliminarily, to all areas beyond Chicago.

When the Seventh Circuit stayed the nationwide scope of the injunction, the Attorney General demanded that Evanston and many members of the Conference agree to the Conditions or else forgo the Financial Year 2017 award. The Attorney General imposed August decision deadlines on those members, meaning the Plaintiffs here require injunctive relief, if at all, within the next few days. (Cochran Decl. ¶¶ 42-46, Dkt. 10-1 (explaining that some Conference members face an August 10th deadline, while others face a deadline of August 27th).) For simplicity's sake, the Court will refer to these below simply as to the "accept or decline" deadlines.

With the above in mind, the Court considers Plaintiffs' Motion. Writ large, the Attorney General has two objections to the sought-after injunction: First, he contends Plaintiffs lack standing; second, he contends that even if Plaintiffs have standing, they fail to pass the bar for injunctive relief.

To have standing, "a plaintiff must show he is under threat of suffering an 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). The Attorney General argues Evanston lacks standing because it is merely a "subrecipient," and the City of Chicago (which is presently protected from the Conditions by injunction) is the "recipient" that applies for Byrne JAG awards on Evanston's behalf. The Attorney General explains that he determined not to enforce any award conditions in any FY 2017 Byrne JAG award made to Chicago while the injunction is in force, and that "this non-

enforcement would also apply to any subaward under Chicago's award."  (*See* Trautman Decl. ¶ 5, Dkt. 15-1.)  This explanation does not clear up matters nor indicate that Evanston is free from the hazards imposed by the Attorney General's August deadlines. In court on August 8th, the Acting Assistant Attorney General represented that when a subrecipient receives funds, it is the *recipient only* who signs the contract with the DOJ promising to adhere to the Conditions.  And yet, the Attorney General does not dispute that said subrecipient must still comply with those Conditions regardless, as Evanston declares it has had to do in years past.  (*See* Gergits Decl. ¶¶ 4-5, Dkt. 10-3.)  Thus, to receive funds, Evanston must accept the Conditions just like the other would-be grantees, and the injunction presently in place as to Chicago does not insulate Evanston from that requirement. Evanston faces an imminent and concrete injury fairly traceable to Defendant's actions; the City has standing to pursue injunctive relief.

That brings us to the Conference of Mayors.  The Court considered the Conference's standing once before, when the Conference sought to intervene in the *Chicago v. Sessions* case. 2017 WL 5499167, at *5.  The Court agreed the Conference had standing, though it considered standing on a less exacting standard than the one it must now apply.  Earlier, the Court accepted the Conference's factual allegations as true; now, the Conference must present at least "competent proof," meaning a "showing by a preponderance of the evidence," that standing exists.  *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).  The Attorney General marshals several arguments against standing.  First, he argues the Conference represents *mayors*—not cities—upon whom the Conditions impose no burden.  But the

Conference's constitution indicates the contrary is true: Said document precludes membership for municipalities of less than 30,000 people. (Conference Constitution, art. II, § 1, Dkt. 10-2.)

The balance of the Attorney General's arguments is best considered within the framework for associational standing, which is what the Conference purports to have here. Such standing demands: (1) its members would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to its organizational purposes; and (3) neither the claim asserted, nor the relief requested requires the participation of individual association members in the suit. *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977)) (citations omitted).

To the first requirement: It is not necessary that every one of the association's members has standing to sue in its own right. Rather, it suffices when any one member shows that it would have standing to bring suit on its own behalf. *Hunt*, 432 U.S. at 342-43; *accord Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 438 (N.D. Ill. 1996). The Conference recounts that over 250 of its members were allocated FY 2017 awards and face the August "accept or decline" deadlines. (Cochran Decl. ¶¶ 42-47, Dkt. 10-1.) As this Court ruled once before, those cities all have standing, just as Chicago did in its case. *See City of Chicago*, 2017 WL 5499167, at *5. The first requirement is met.

As for the second requirement, which turns upon the association's "organizational purposes": The Conference's CEO declares that the Conference was founded to coordinate cities' interactions with the federal government. To that end, the

Conference adopted three resolutions "supporting immigrant rights," signaling the Conference's intent to protect and preserve local decision making and opposing so-called "punitive sanctuary jurisdiction policies that limit local control and discretion." (Cochran Decl. ¶¶ 4-23, Dkt. 10-1.) The Conference's actions and its chief executive's words demonstrate that its interests in seeking injunctive relief—which would preserve the power and discretion of local decision making against federal overreach— accord with the Conference's organizational purposes. (*See id.*)

The Attorney General has one other argument on this front worth mentioning. He contends that the Conference is not authorized to litigate on behalf of its members, which is required where said members have "profound conflicts of interest." *See Retired Chi. Police Ass'n*, 76 F.3d at 864. Such profound conflicts occur where, for example, associations seek to sue their own members, *see Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1380-81 (7th Cir. 1987), or where the association's suit, if successful, would increase some of its members' insurance premiums, *see Retired Chi. Police Ass'n*, 76 F.3d at 865-66. As Plaintiffs point out, there are no such "profound conflicts" at play here. The Attorney General explains that some of the Conference's members support the grant Conditions, and that other members, like the Texas municipalities, are bound to follow state-law requirements that mirror the federal Conditions anyway. These differences in policy preference or state law, however, do not amount to a profound conflict: Those Conference members that agree with the Attorney General's Conditions may continue to accede to and support them, and the Texas municipalities are under no obligation to flout their state-law requirements if this suit succeeds. Simply put, these lesser

conflicts between members do not rise to the level preclusive of standing.  *See Builders Ass'n of Greater Chi.*, 170 F.R.D. at 438-39 (citing *United Automobile Workers v. Brock*, 477 U.S. 274, 290 (1986)).

Finally, associational standing exists only when the suit does not require the participation of the individual members.  The Court ruled once before that the injunctive and declaratory relief the Conference now seeks raises purely legal questions, is not contingent on evidence from a specific city, and thus is "amenable to associational standing."  *City of Chicago v. Sessions*, 2017 WL 5499167, at *5 (N.D. Ill. Nov. 16, 2017); *cf. Brock*, 477 U.S. at 287-88 (finding associational standing when suit presented only pure questions of law); *Org. of Minority Vendors, Inc. v. Ill. Cent. Gulf R.R.*, 579 F. Supp. 574, 590 (N.D. Ill. 1983) (finding associational standing for group's injunctive relief claims).  This is so because every Conference member, regardless of its particular local policies, stands to benefit by being inoculated against federal overreach.  The Court stands by that earlier ruling now.  Accordingly, the Conference has met all three requirements to pass the associational standing threshold.

Having determined that Plaintiffs have standing, the question remains whether the Court should order the injunctive relief they seek.  To win a preliminary injunction, Plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  When, as here, the Government is the opposing party, the last two factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Of course, the Court does not make this determination in a vacuum.  Instead, the Court is guided by its earlier rulings in the *Chicago v. Sessions* case as well as the Seventh Circuit's affirmance and subsequent *vacatur* of the nationwide scope of the injunction.  In its earlier decisions, this Court found that the same argument presented by Plaintiffs here—namely that the Attorney General lacks the statutory authority to impose the Conditions—had merit.  Though the plaintiffs at bar have changed, the legislation proscribing which conditions the Attorney General may attach has not.  The Attorney General once more argues that hidden away within 34 U.S.C. § 10102 is a sweeping grant of authority that entitles him to impose these, and nearly any other condition, he chooses.  Though he flavors that argument differently than he did last time around, it is substantially the same.  The court of appeals labeled the earlier iteration "untenable," and this Court agrees.  *City of Chicago v. Sessions*, 888 F.3d 272, 285 (7th Cir. 2018).  Said argument does no work for the Attorney General here.  The Court believes Plaintiffs are likely to prevail on the merits of their claims.

Beyond that, Plaintiffs must show they face irreparable harm absent injunctive relief.  This hurdle too has been cleared.  First, the Attorney General has imposed August deadlines by which Plaintiffs must either accept the grant and its Conditions or else decline the funds outright.  Because this Court has already found that the Attorney General lacks the authority to impose *any* of these Conditions, however, the choice Plaintiffs face—to decline funds or accept them upon pain of sacrificing their sovereign powers—is no choice at all and is itself sufficient to establish irreparable harm.  *Cf. Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537-38 (N.D. Cal. 2017) (citing *Morales v. Trans World*

*Airlines, Inc.*, 504 U.S. 374, 380-81 (1992)). That some Conference members may like and even endorse the policies embodied by the Conditions does not change things. These localities still suffer an affront to their sovereignty when the Attorney General is permitted to direct their behavior in an unauthorized way. Indeed, by seeking to implement their own, pro-federal-immigration, preferred policies, those Conference members exercise the same local sovereignty the Attorney General now threatens to impinge.

Finally, Plaintiffs must show the balance of equities tips in favor of granting the requested injunction. This is where Plaintiffs' prayer for relief runs into trouble. The Seventh Circuit recently vacated its affirmance of the Court's nationwide injunction, signaling that a majority of that court has agreed to revisit the issue. After that, this Court published another ruling in which it found, based on an application of a recently-issued Supreme Court opinion, that 8 U.S.C. § 1373 is unconstitutional and thus the Compliance Condition, which subsumes that statute, is also unlawfully imposed. *City of Chicago*, 2018 WL 3608564, at *11. That Section 1373 determination was admittedly a closer question than the earlier-issued decision invalidating the Notice and Access Conditions, and the complexity of that latter decision gives the Court some pause in awarding the injunctive relief in this case.

The difficulty here arises from the scope of relief necessary to protect the Conference's members from the imposition of the Conditions. The Conference has over 1,400 members across the country, though only about 250 ask for relief here. (Cochran Decl. ¶¶ 5, 42-47, Dkt. 10-1.) Even in its most limited form, any injunction issued in their favor will have effects throughout the country and certainly far beyond the borders of the Seventh

Circuit. The Court recognizes that unlike in *Chicago v. Sessions*, the party requesting relief is not a single city—but an association comprised of many—and the injunction Plaintiffs seek is designed to protect their interests—rather than the interests of non-parties nationwide. Even so, a Conference-favoring injunction engenders many of the same concerns that agitated against entering a nationwide injunction in the *Chicago* case. Prime among these is denying difficult statutory questions—like the ones here concerning Section 1373—the chance to percolate through the courts in other jurisdictions. *City of Chicago v. Sessions*, 888 F.3d 272, 297 (7th Cir. 2018) (Manion, J., concurring in part and dissenting in part). Though this Court found such a broad injunction nevertheless appropriate in *City of Chicago*, the court of appeals has signaled it may have a different perspective. Thus, given the pending rehearing, this Court is disinclined to issue another, similarly-broad injunction absent further guidance from the court of appeals.

As evidenced by this Court's recent ruling entering and staying the permanent injunction in the *Chicago v. Sessions* case, the Court believes judicial economy and the public interest will be best served if the court of appeals is permitted the opportunity to consider the rehearing now pending on these issues and express its opinion as to the nationwide injunction. This will avoid possibly subjecting the Attorney General and grant applicants across the nation to the judicial whiplash brought on by an *en banc* reversal. But the Attorney General's fast-approaching "accept or decline" deadlines pose a problem. The Plaintiffs no doubt have a keen interest in jealously guarding their autonomy against federal outreach; yet this Court has a keen interest in deferring to the guidance of higher courts and, in accordance with

that guidance, not binding up the litigation before other judges across the country without an acknowledgement of the propriety of doing so. (*Cf.* Order, *City of Chicago v. Sessions*, No. 17-2991 (7th Cir. June 14, 2018), Dkt. No. 131 (refusing Attorney General's motion for immediate ruling on his motions for a stay and stating the court of appeals intended to rule only after the Supreme Court's resolution of similar issues in *Trump v. Hawaii,* 138 S. Ct. 2392 (2018)).)

Fundamentally, this Court has considerable discretion in issuing a preliminary injunction. *Computer Care v. Serv. Sys. Enters.*, 982 F.2d 1063, 1067 (7th Cir. 1992). Faced with competing and difficult-to-balance equities, the Court uses that discretion to rule as follows: The Court issues the sought-after injunction as to both Evanston and those members of the Conference who face the Attorney General's August deadlines, though, in line with its recent ruling in the *Chicago* case, the Court also stays the injunction as to the Conference, which, by virtue of its membership, demands an injunction of near-nationwide effect. *See City of Chicago*, 2018 WL 3608564, at *18 (staying in large part this Court's permanent nationwide injunction). As the Court laid out in *City of Chicago*, "[s]tays, like preliminary injunctions, are necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error." 2018 WL 3608564, at *18 (quoting *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014)). Further, "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.* Especially given the close question posed by the Section 1373 analysis, the Court believes, as before, that the public interest

will be best served by deferring to the court of appeals rather than mooting those many parallel suits now pending in different jurisdictions. *Cf. California ex rel. Lockyer v. U.S. Dep't of Agric.*, 710 F. Supp. 2d 916, 924 (N.D. Cal. 2008) (staying in part an injunction to minimize conflict with jurisdictions entertaining similar litigation), *aff'd*, 575 F.3d 999 (9th Cir. 2009). This interest in streamlining judicial economy weighs heavily enough even to overcome the injury those Conference members face in having to decide whether to accept the offered FY 2017 funds by the Attorney General's deadlines.

Should the Conference believe this stay is improvidently imposed, it may raise the issue with the Seventh Circuit in short order. Until then, this Court believes it must hew closely to the deference required of it for higher authority. The requested injunction is now ordered, though immediately stayed as to the Conference.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Dated: 8/9/2018