```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   CITY OF EVANSTON, et al.,        )
                                      )
 4            Plaintiffs,             )
                                      )
 5            v.                      )  No. 18 CV 04853
                                      )
 6   JEFFERSON BEAUREGARD SESSIONS,   )
     III, etc.,                       )  Chicago, Illinois
 7                                    )  August 8, 2018
              Defendant.             )   9:18 a.m.
 8
                      TRANSCRIPT OF PROCEEDINGS
 9        BEFORE THE HONORABLE HARRY D. LEINENWEBER

10   APPEARANCES:

11   For the Plaintiffs:        TABET DiVITO ROTHSTEIN
                                BY:  MR. BRIAN C. HAUSSMANN
12                                   MS. KATHERINE M. O'BRIEN
                                209 South LaSalle Street, Suite 700
13                              Chicago, Illinois 60604
                                (312) 762-9450
14
     For the Defendant:         MR. CHAD A. READLER
15                              Acting Assistant Attorney General
                                MR. BRAD P. ROSENBERG
16                              U.S. Department of Justice
                                20 Massachusetts Ave., N.W.
17                              Washington, D.C. 20001
                                (202) 514-3374
18
                                HON. JOHN R. LAUSCH, JR.
19                              United States Attorney
                                BY:  MR. THOMAS WALSH
20                              Assistant United States Attorney
                                219 South Dearborn Street, Suite 500
21                              Chicago, Illinois 60604
                                (312) 353-5300
22
     Court Reporter:            Judith A. Walsh, CSR, RDR, F/CRR
23                              Official Court Reporter
                                219 South Dearborn Street, Room 1944
24                              Chicago, Illinois 60604
                                (312) 702-8865
25                              judith_walsh@ilnd.uscourts.gov
```

1       (Proceedings heard in open court:)

2           THE CLERK:  18 C 4853, City of Evanston versus

3   Sessions.

4           MR. HAUSSMANN:  Good morning, your Honor.  Brian

5   Haussmann on behalf of the United States Conference of Mayors.

6           MR. WALSH:  Thomas Walsh for the United States.

7           MR. ROSENBERG:  Brad Rosenberg for the United States.

8           MR. READLER:  Chad Readler on behalf of the United

9   States.

10          MS. O'BRIEN:  And Kate O'Brien also on behalf of the

11  U.S. Conference of Mayors.

12          THE COURT:  What precisely is up this morning?

13          MR. HAUSSMANN:  Your Honor, when we were before your

14  Honor on our motion for preliminary injunction, you had

15  originally said you would set it for ruling tomorrow.  When

16  you issued your minute order, you set it for argument today

17  and ruling tomorrow.  So we're up both this morning and

18  tomorrow morning as the schedule currently stands.

19          THE COURT:  All right.  Let me ask this:  Is there

20  any basis for distinguishing between Evanston and City of

21  Chicago?

22          MR. READLER:  Yes, there is, your Honor.

23          THE COURT:  What?

24          MR. READLER:  So City of Chicago is the grant

25  recipient through the Byrne JAG program.  Evanston is a

1  sub-recipient.  So all of Evanston's rights flow through the

2  City of Chicago.  Evanston has no independent right to the

3  grant.  They have no independent right to reject or assert

4  conditions.  That's all done through the City of Chicago.

5      We've submitted a declaration from the Department of

6  Justice that explains how that process works.  So in our view,

7  Evanston does not have standing to pursue a claim here.  Only

8  Chicago would have standing to do it because, again, they're

9  the actual recipient of the grant.  And also Chicago, of

10  course, already has relief.  So in that sense, there's no

11  injury to Evanston here either because the conditions will not

12  be enforced against Chicago and, thus, Chicago won't be

13  enforcing them against a sub-recipient.

14      MR. HAUSSMANN:  Your Honor, a couple of things.

15  First, I should mention that counsel for Evanston,

16  Ms. Michelle Masoncup, couldn't be here this morning.  I think

17  I can respond to --

18      THE COURT:  All right.

19      MR. HAUSSMANN:  -- counsel's argument regarding

20  Evanston, but I wanted to mention that she will be available

21  tomorrow if your Honor has further questions at that time.

22      With respect -- there are two plaintiffs here:

23  Evanston and the U.S. Conference of Mayors.  With respect to

24  Evanston, this argument that as the sub-recipient, Evanston

25  has no standing to sue is nonsense for the simple reason that

1    as the Attorney General acknowledges, even sub-recipients, in

2    order to receive the funds through, in this case, Chicago have

3    to certify compliance with the challenged conditions.  And, in

4    fact, Chicago would have to police that in the ordinary course.

5         And so in order for -- in order for Evanston to

6    receive the funds, it still needs to certify compliance with

7    the conditions.  Nothing more is required here, your Honor.

8    They are awaiting and have been allocated funds just like

9    every other city, and they must certify compliance with the

10   conditions in order to receive those funds.

11        THE COURT:  Is that correct?  The sub-recipients

12   likewise have to do the same -- subject to the same conditions

13   as the recipient?

14        MR. READLER:  That's correct, your Honor, but the

15   contract is between the City of Chicago and the federal

16   government.  The City of Chicago is the recipient of the

17   grant.  So all of the rights of the sub-grantees are

18   controlled by the actual grantee itself.

19        In other words, the real party in interest here is

20   the City of Chicago.  And the sub-grantee has no independent

21   rights.  It doesn't apply for the grants.  The City of Chicago

22   then applies.  And so it has no standing to challenge the

23   conditions that may or may not apply to Chicago.

24        And again, also, you've already resolved whether

25   there's actually any harm here because you've enjoined

1  enforcement against Chicago, so there's no harm against

2  Evanston because those conditions also can't be enforced

3  against Evanston.

4      THE COURT:  What's the harm if I grant the injunction

5  against -- in favor of Evanston, also?  What's the harm?

6      MR. READLER:  Well, your Honor, we don't think they

7  have standing, for one, so we don't think they're a proper

8  plaintiff in this case.  And we also think that to the extent

9  the Conference of Mayors also represents sub-grantees, it's

10  the same issue.  Again, those aren't the real parties in

11  interest.  They wouldn't have independent standing to

12  challenge conditions of a contract between Chicago and the

13  federal government.

14      THE COURT:  Well, I think they're in a slightly

15  different position than the Conference of Mayors.  But it

16  seems to me that -- what is the status as far as the

17  government's position with the City of Chicago?

18      MR. READLER:  With respect to that case, your Honor?

19      THE COURT:  Yes.  I mean, I entered -- not a final

20  judgment.  I think there's some outstanding things.

21      MR. READLER:  Correct.  You entered a permanent

22  injunction in that case.

23      THE COURT:  Right.

24      MR. READLER:  And so as of now, the federal

25  government will not be enforcing the three conditions at issue

1  against the City of Chicago.  The nationwide injunction aspect

2  of that case, as you know, the en banc Seventh Circuit issued

3  a stay of the nationwide injunction.

4          THE COURT:  Right.  I understand that.  In fact, I

5  stayed the nationwide injunction, also.

6          MR. READLER:  Correct.  So the conditions are not

7  going to be enforced as of now against Chicago and, thus,

8  won't be enforced against Evanston.

9          THE COURT:  Well, I think for -- let's see.  I've

10 been told that there's an August 10 deadline.

11         MR. HAUSSMANN:  That's correct, your Honor.

12         THE COURT:  What is that deadline precisely?

13         MR. READLER:  That's the date upon which the grant

14 recipients have to agree to -- agree to the conditions in the

15 grant or reject the grant.  Now, that would be to the City of

16 Chicago, which has -- the deadline would apply to the City of

17 Chicago, and then the sub-recipients would --

18         THE COURT:  What --

19         MR. HAUSSMANN:  To be clear, Judge, it would apply

20 not just to the City of Chicago but to hundreds of other

21 cities around the country including hundreds that are

22 represented here today by the Conference of Mayors.

23         THE COURT:  Well, it seems to me that there's not a

24 particularly good reason not to enter the injunction in favor

25 of Evanston, so the Court will do so.

1      It seems to me that, whatever an August 10 deadline

2  is, that if it applies to Evanston at all, then they need the

3  injunction.

4      MR. READLER:  Right, and it doesn't apply to Evanston

5  because it only applies to Chicago.  And Chicago is going to

6  get their grant.  Evanston will then get the conditions of

7  Chicago --

8      THE COURT:  It seems to me, no harm, no foul.  I will

9  extend the injunction to the claim of the City of Evanston.

10  Now, that leaves, what, the Conference of Mayors?

11      MR. HAUSSMANN:  Correct, your Honor.

12      THE COURT:  Do you want to comment on that?

13      MR. READLER:  Absolutely, your Honor.  So there's

14  obviously a lot of history here with nationwide injunctions.

15  The Seventh Circuit stayed enforcement of the nationwide

16  injunction in the Chicago case.  The Ninth Circuit recently

17  vacated a nationwide injunction in a case arising out of

18  grants that were subject -- or applicable to the State of

19  California and the City of San Francisco.

20      What the Conference of Mayors is trying to do here is

21  to essentially achieve another nationwide injunction even

22  though, one, the authority is against it and, two, they

23  haven't established standing or injury for a host of their

24  members.

25      So a couple of points to make.  First, I would start

1   with the lack of standing for the Conference of Mayors and

2   then, second, also explain why, even if there is standing,

3   there's no basis for a preliminary injunction.

4           The first issue here is that this conference, to the

5   extent it represents mayors, mayors are typically not

6   authorized to bring suit on behalf of a city.  So the

7   Conference purports to represent a number of cities, but

8   there's no -- there's no indication here that there was

9   authorization by these cities, by the legal officer in the

10  city to pursue a case, has actually authorized the lawsuit.

11  Typically, it's not the mayor.  It's oftentimes the city

12  council or the city attorney.

13          Just as a starting point, there's no indication that

14  these cities actually authorized a suit on their behalf, that

15  the officer who can do that has done so.  And the resolution

16  that the mayors have offered here doesn't authorize a lawsuit

17  in this case.  It doesn't mention anything about expressly

18  authorizing a lawsuit.

19          A significant problem here, a consistent theme across

20  the conference is that many of the cities in the conference

21  don't oppose to the conditions that are being imposed.  Many

22  of them have laws that actually require compliance with the

23  federal government.  And some of them actually have said that

24  in this case.

25          As legal authority, I point your Honor to a decision

1    that Judge Orrick issued in another one of these grant cases.

2    That was a case where San Francisco and the State of

3    California had sued in the Northern District of California.

4    Los Angeles also didn't like the conditions that were being

5    applied to it, and it tried to intervene in this case in front

6    of Judge Orrick in San Francisco, and Judge Orrick said, "No,

7    your policies are different.  Every city's policies are

8    different, and so you can't intervene in this case.  It

9    involves different policies.  You have to pursue your case in

10   your own venue."

11           What the Conference is trying to do here is take

12   essentially every city across the nation with varying

13   policies, again, many of -- well, two issues.  One, they

14   haven't actually presented any evidence of what those actual

15   policies are, no declarations like you saw in the City of

16   Chicago case but, two, many of those cities are -- actually

17   are in agreement with these conditions.  54 of those cities

18   have already accepted the conditions, and yet the City -- the

19   mayors are trying to undo all of that and get in front of you

20   essentially a nationwide injunction to override a host of

21   cities that actually agree with the conditions and to do so

22   without any evidence of what the actual policies are in these

23   cities and whether any sort of lawsuit was actually authorized.

24           The Conference talked about a resolution that it

25   passed that, in their view, justifies what they're doing.

1   According to the Conference, they have 1400 members.  Only 250

2   members even voted on this resolution, and not all of them

3   voted for it.  So it's pretty hard to accept that this

4   conference truly represents the interests of all cities around

5   the country.

6           And a couple of additional points.  Some cities and

7   states have filed amicus briefs in this case, your Honor,

8   making clear to you that they don't agree with what the

9   Conference is doing here.  The Conference purports to

10  represent them, but they filed amicus briefs saying that they

11  don't agree with it and they don't think the Court should

12  grant relief for that basis or there's actually no standing,

13  no injury to the Conference for that reason.

14          Assuming you think that there is standing, there's

15  also, one, no injury here to the Conference itself and, two,

16  the balance of harms and the equities favor very much the

17  United States.  The problem here is that the Conference will

18  not be bound by any negative resolution of this case.  This is

19  just a one-way ratchet in terms of a legal device.  What

20  they're saying is they can sue, they can come in on behalf of

21  all of these cities and if they win, they want to get relief

22  for all of these cities but if they lose, no problem for the

23  cities because the cities can all sue in other cases.  They

24  can join another association and bring a lawsuit there.

25          Your Honor, I think it's worth noting that like

1      Chicago, San Francisco, Philadelphia, a host of other cities

2      have already brought their own cases.  In some of those cases,

3      they've received relief.  In some of those cases, they haven't

4      received relief, and yet the Conference is trying to come here

5      on behalf of those same cities and potentially achieve relief

6      they couldn't achieve in another case.

7              The bottom line is that these cases can be pursued by

8      the individual cities like Chicago and Evanston has done, but

9      there's no basis for the Conference to do it here.  And they

10     haven't given you any authority of a case where a court had an

11     association before it and granted a nationwide relief the way

12     they want to do so here.

13             So we think the orderly way to do this is to allow

14     these issues to percolate around the country just as we think

15     the Seventh Circuit en banc court indicated by staying the

16     nationwide injunction there.  That's how these issues should

17     proceed.

18             THE COURT:  Counsel?

19             MR. HAUSSMANN:  Your Honor, briefly, there are a few

20     things to address here, but the first is the practical reality

21     of the situation.  You will recall that we sought to intervene

22     in this case previously.  And at that time, the Attorney

23     General said that we should -- there should be many lawsuits

24     filed or at least that the Conference should file its own

25     lawsuit.  We've now done that.

1    And here's the practical reality of why we're here

2  today, your Honor.  By Friday, it's undisputed that hundreds

3  of cities around the country are going to have to be forced to

4  decide whether to accept the funds with the conditions

5  attached or to forego receipt of these funds.  It's also

6  undisputed -- and of those, your Honor, about 250 -- and we've

7  put in specifically each one.  About 250 of those cities are

8  conference members, and still more conference members will

9  have to decide shortly after Friday.  Friday is just the first

10  deadline.  Altogether, 300 Conference cities for fiscal year

11  2017 alone, over 300, are awaiting about $50 million in grant

12  money.  That's undisputed.

13    It's also undisputed that these Byrne JAG funds are

14  critically important for law enforcement purposes in these

15  jurisdictions.  The Attorney General could not possibly

16  dispute that.  These funds are used to hire more police

17  officers, to combat gun and gang violence and drugs.  It's

18  also undisputed that notwithstanding the importance of these

19  funds, if these cities do not decide by Friday to accept the

20  conditions, the Attorney General will not release the grant

21  funds to those cities.  That $50 million will not go to the

22  cities that need it.  That's not in dispute.  And it's also

23  not in dispute that the three conditions that we're here to

24  talk about are the same three conditions that both this court

25  and the Seventh Circuit have ruled are unauthorized and

1   unconstitutional.  And on the basis of that alone, we should

2   be granted an injunction.

3         Now, with respect to the arguments raised today that

4   there are essentially two categories, and these fall, both of

5   them fall under the heading, I think, of, you know, attempted

6   procedural roadblocks.  We weren't allowed to intervene, they

7   argued, because we could file our own suit.  We're also not

8   allowed now to represent Conference cities for a variety of

9   reasons.  He calls those standing reasons, and I want to

10  address them.

11        And then he says that, counsel says we haven't

12  established irreparable harm because we haven't put in

13  sufficient evidence of the specific effects that the

14  conditions will have on each of these jurisdictions.  That's

15  both incorrect, your Honor, and misplaced.  It's misplaced

16  because as this Court has held, a party faces irreparable harm

17  if it's forced to choose between adhering to an

18  unconstitutional law and facing financial injury or harm.

19  It's absolutely undisputed that the Attorney General is now

20  forcing that, just such a choice on these cities.

21        Second, while no evidence is really needed, it's not

22  correct that the Conference has not put forward evidence of

23  the specific impact that these conditions will have on their

24  cities.  First, both Evanston and the Conference have put in

25  declarations -- the Conference from its executive director and

1   CEO, Tom Cochran, has testified that many cities -- and these

2   are ordinances, your Honor, that your Honor can look up just

3   like any other law.  Many cities have welcoming city policies

4   just like Chicago's welcoming city policies that would be

5   overridden by these conditions.

6          Second, Mr. Cochran testified to the overwhelmingly

7   shared belief among Conference cities as expressed through

8   several resolutions that the conditions at issue are

9   unconstitutional commandeering and, more important, that they

10  will affect these cities' relationships with their immigrant

11  communities and, in particular, will affect law enforcement

12  relationships with those immigrant communities.

13         The Attorney General offers no contrary evidence.  He

14  just says, "Well, you didn't put in a declaration from each of

15  the 250 cities' police chiefs or mayors that says that."  It's

16  not needed.  There's no reason for that.  And under

17  well-established law including binding Circuit precedent, your

18  Honor -- counsel said a moment ago there's no authority for

19  the nationwide injunction.  In truth, there is authority for

20  it.  There's a panel decision of the Seventh Circuit that has

21  held that it was appropriate.  I understand that's now been

22  stayed, but it's not correct that there's no authority.

23         And under binding Circuit precedent in that same

24  decision, the threatened impact of these conditions on the

25  cities' sovereign ability to police themselves and on their

1 officers' relationships with city residents is irreparable

2 harm.  The Attorney General did not challenge that on appeal

3 in the Chicago case, your Honor.  And perhaps even more

4 importantly, the Attorney General puts in no evidence today of

5 any harm that he will face if the conditions cannot be imposed.

6   As the Seventh Circuit held, there is no harm.  For

7 ten years, the Attorney General has distributed these same

8 funds to cities that are critical for law enforcement needs

9 without those conditions.  By contrast, the harm that cities

10 face is real, your Honor, and we've put forth more than enough

11 evidence of that.

12   With respect to standing, the Attorney General uses

13 the term "standing" throughout his response brief, your Honor,

14 but really, many of the arguments he raises have nothing

15 whatsoever to do with standing.  We've addressed already this

16 idea that indirect grant recipients don't have standing

17 because they receive their funds through another city, but he

18 raises a number of additional arguments that he calls standing

19 arguments.

20   So, for example, he says there are three other

21 categories of cities that, in the Attorney General's view, do

22 not have standing to seek any relief whatsoever from these

23 conditions.  These include cities that have no welcoming city

24 ordinances on their books, cities that voluntarily choose to

25 comply with the conditions, and cities and states like Texas

1   that have state laws that are similar to, at least in some

2   respects, some of the conditions that are attempted to be

3   imposed here.

4         But as a matter of law -- those arguments

5   misunderstand both the law, your Honor, and plaintiffs'

6   requested relief.  First, as a matter of law, all of these

7   cities share the same interest in freeing themselves from

8   these forced conditions.  Whatever cities think of these

9   conditions, they share the same legal interest in not having

10  the Attorney General, who is unauthorized, be able to impose

11  them at his unilateral will upon cities.

12        And additionally, nothing about the requested

13  injunction will change cities' abilities to make their own

14  choices.  Cities will be free following the Court's injunction

15  to either agree to the conditions, to comply with state law,

16  and to make their own policies.  That, in fact, is the entire

17  point.

18        And finally, I'll just address the conference, the

19  additional argument he makes as to Conference's, the

20  Conference's standing, which is the authorization argument.

21  This event settled precedent, and we've cited the cases in our

22  reply brief.  In fact, they were the same cases cited by the

23  Attorney General, your Honor.  It's -- authorization from

24  individual members to pursue litigation is not under the

25  doctrine of associational standing required unless there is a

1   profound conflict of interest.  The profound conflict of

2   interest would be a case -- there's only two categories of

3   cases that would qualify, your Honor.  The first is one in

4   which members of the Association were on both sides of the V.

5   That is, the Association is suing some of its members.  That's

6   not the case here.

7          And the second is where some members would be

8   directly and adversely impacted by a favorable ruling.  As

9   I've just said, that's also not the case here.

10   Notwithstanding the policy decisions of these individual

11   jurisdictions, nothing about the injunction will adversely

12   impact any conference member.  If conference members in Texas

13   including those that -- well, actually, there's only one

14   conference member that's sought to -- leave to file an amicus

15   brief.  The other cities are not members.  But in any event,

16   if those cities wish to comply with -- voluntarily with the

17   conditions, they absolutely will not be prevented from doing

18   so by this injunction.

19          With respect, finally, your Honor, to the scope of

20   the relief at issue, I actually think that there's very good

21   reason in this case to extend this injunction program-wide,

22   not just for the reasons that your Honor has previously

23   articulated but for the practical reasons that have come up

24   just today.  The Attorney General has made very clear in his

25   briefing throughout the Chicago case and this case that he

1    will take every step possible to impose these conditions upon
2    all jurisdictions who are not governed by an injunction.

3         So it seems to me that there are two options for the
4    Court if the Court feels we're entitled to injunctive relief.
5    Your Honor could grant an injunction that would apply to our
6    members, or your Honor could grant a program-wide injunction.
7    And our view is that a program-wide injunction is actually
8    necessary to protect all of our members precisely because the
9    Attorney General has said he will try to impose the conditions
10   upon direct recipients, whose indirect recipients, some of
11   which are conference members.

12        So there are many conference members -- and we put
13   this in evidence, your Honor -- who receive their funds
14   indirectly through state grants, county grants, and other city
15   grants.  Most of the cities, in fairness, would be protected
16   if your Honor were to extend the injunction to all conference
17   members, not all, but most, but some of the cities that
18   receive their money indirectly through county grants would not
19   be protected if the injunction did not apply program-wide, and
20   that's because the Attorney General could impose those
21   conditions upon the county as grounds for denying the funds.
22   And it would result in the indirect grant recipient, here, the
23   conference member, not receiving grant funds even though the
24   Court had enjoined imposition of those conditions as to that
25   indirect grant recipient.

1    We believe that for that reason, your Honor, a

2  program-wide injunction is warranted.

3    THE COURT:  Very briefly, response.

4    MR. READLER:  Sure.  Just three brief points.  First

5  of all, your Honor, all of these issues were before the

6  Seventh Circuit at the stay posture.  The Seventh Circuit knew

7  that if it allowed -- if it stayed the injunction that those

8  cities would not be protected by the injunction, that the

9  deadline would come, and they would have to decide whether to

10  accept or reject the conditions and, in fact, have sent

11  argument on the issue after the deadline.  So the Seventh

12  Circuit has implicitly already addressed the issue of the

13  concern of the August deadline and has rejected it.

14    Second, there's a vehicle here available to all of

15  these cities, which is to bring a suit on their own just as

16  Evanston has done, just as Chicago has done, Philadelphia, San

17  Francisco.  But there's no basis for a conference to bring a

18  suit on behalf of all these cities and somehow receive a

19  nationwide injunction.  Again, there's no authority for that.

20  I don't think they've given you any authority.

21    The third point, your Honor, is that there is a

22  significant lack of evidence here.  And that's not a small

23  issue.  The plaintiffs have the burden both to prove their

24  standing and to prove why they're entitled to a preliminary

25  injunction.  In Chicago, you had a number of declarations

1    explaining how the City policy worked, how it was inconsistent

2    with the conditions, and how the specific conditions would, in

3    Chicago's view, harm the city.

4         Your Honor, all you have here, all you have is one

5    declaration from the head of a lobbying organization who

6    purports to say that hundreds and hundreds of cities have

7    policies that somehow conflict with the Attorney General's

8    conditions and that they'll be harmed.  That is significantly

9    less than what the Court requires in terms of proving injury

10   in this case.

11        THE COURT:  The deadline is the 10th?

12        MR. HAUSSMANN:  It's Friday, your Honor, yes.

13        THE COURT:  All right.  We'll have a decision by the

14   10th.  Thank you.

15        MR. READLER:  Thank you, your Honor.

16        MR. HAUSSMANN:  Your Honor, is tomorrow's date

17   stricken, or should we come in?

18        THE COURT:  What was -- what did I have tomorrow?

19   Was that the ruling?

20        MR. HAUSSMANN:  You set it for ruling tomorrow at

21   9:00 a.m.

22        THE COURT:  It will be a written ruling.

23        MR. HAUSSMANN:  Thank you, your Honor.

24        THE COURT:  Thank you.

25        (Proceedings adjourned at 9:42 a.m.)

1   C E R T I F I C A T E

2        I, Judith A. Walsh, do hereby certify that the

3   foregoing is a complete, true, and accurate transcript of the

4   proceedings had in the above-entitled case before the

5   Honorable HARRY D. LEINENWEBER, one of the judges of said

6   court, at Chicago, Illinois, on August 8, 2018.

7

8   */s/ Judith A. Walsh, CSR, RDR, F/CRR*_____      August 28, 2018

9   Official Court Reporter

10  United States District Court

11  Northern District of Illinois

12  Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25