IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF EVANSTON and THE
UNITED STATES CONFERENCE OF
MAYORS,

                    Plaintiffs,          Case No. 18 C 4853

          v.                             Judge Harry D. Leinenweber

WILLIAM P. BARR, in his
official capacity as
Attorney General of the
United States,

                    Defendant.

## MEMORANDUM OPINION AND ORDER

This litigation concerns the U.S. Attorney General's ability to attach conditions to funds that Congress charged his office with distributing to State and local governments. Plaintiffs, the City of Evanston and the U.S. Conference of Mayors (the "Conference"), bring suit against the Attorney General for alleged violations of the U.S. Constitution and the Administrative Procedures Act. Plaintiffs now seek summary judgment in their favor. The Attorney General, in turn, contends that the Court should dismiss Plaintiffs' Amended Complaint, or in the alternative, grant summary judgment in his favor. For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 77) is

denied and Plaintiffs' Motion for Summary Judgment (Dkt. No. 52) is granted in part and denied in part.

## I. <u>BACKGROUND</u>

In addition to describing the most relevant facts here, the Court incorporates those facts previously described in its earlier ruling. (*See* Aug. 9, 2018, Order, Dkt. No. 23.) The Conference is a non-profit and non-partisan association that exists to address the intersection of federal and local policy on behalf of cities with populations of 30,000 or more. (Def.'s Resp. to Pls.' Stmt. of Facts ("PSOF") ¶¶ 1, 8-10, Dkt. No. 80.) The Conference's members are cities, which are represented in the Conference by their mayors. (*Id.* ¶ 8.) Evanston is a municipal corporation and home rule unit of government in Illinois and is a member of the Conference. (*Id.* ¶ 2.) The Conference has resolved to oppose the Attorney General's decision to attach certain immigration-related conditions to Byrne JAG funds. (*Id.* ¶ 8.)

The Byrne JAG program is the primary source of federal criminal justice funding to States and units of local government. (PSOF ¶ 18.) The Office of Justice Programs (OJP) within the Department of Justice (DOJ) oversees the Byrne JAG program. (*Id.*) Byrne JAG funds are administered according to a statutory formula based on share of violent crime, population, and other factors. *See* 34 U.S.C. § 10156. Conference members have applied for and

received Byrne JAG funds since 2006. (PSOF ¶ 24.) In FY 2017, approximately 350 Conference members were directly allocated around $50 million in Byrne JAG funds. (*Id.* ¶ 26.)

Cities can also receive Byrne JAG funds indirectly through their State or a nearby local government. DOJ does not make direct grants to cities that, under the Byrne JAG formula, would receive less than a certain minimum—$10,000 in FY 2017 and FY 2018. (*Id.* ¶ 20.) Cities that are allocated less than $10,000 receive their Byrne JAG funds through an application submitted by the State or nearby local government. (PSOF ¶ 21.) Additionally, the Byrne JAG statute requires cities that bear a higher cost of preventing and investigating violent crimes than their neighboring community to submit a joint application for the aggregate JAG funds allocated both to itself and its neighbor. *See* 34 U.S.C. § 10156(d)(4). For this reason, Evanston receives its Byrne JAG funds through the application submitted by the City of Chicago. (PSOF ¶ 21.) To draw down its JAG funds, Evanston must supply all information or certifications, and agree to any conditions, that DOJ requires of all grant recipients. (*Id.* ¶ 21.) Evanston was allocated $12,654 in FY 2017 Byrne JAG funds, and $10,919 in FY 2018. (*Id.* ¶¶ 26, 29.)

Plaintiffs filed this suit in July of 2018, seeking an injunction to keep the Attorney General from enforcing certain

"notice, access, and Section 1373 compliance conditions" in the FY 2017 Byrne JAG grants. On August 9, 2018, after issuing a ruling on the merits of those conditions in a parallel case, *City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), the Court issued a preliminary injunction in this case. (*See* Aug. 9, 2018, Order.) At that time, the Attorney General had imposed a fast-approaching deadline by which Conference members had to agree to those three unlawful conditions or forgo their FY 2017 awards. Accordingly, the Court issued the preliminary injunction to cover both Evanston and those Conference members facing an "accept or decline" deadline. (*See* Aug. 9, 2018, Order at 11.) However, because the nationwide scope of the injunction in the *City of Chicago* case was (and remains) on appeal before the Seventh Circuit, the Court stayed the injunction as to the Conference members. Soon after, the Seventh Circuit lifted that stay, holding that this case is "fundamentally different" than the situation in *City of Chicago* because the injunction in this case is "limited to parties actually before the court who have demonstrated a right to relief." (*See Evanston and U.S. Conference of Mayors v. Sessions*, No. 18-2734 (7th Cir.), Aug. 29, 2018, Order, Dkt. No. 33.) Thus, since the Seventh Circuit's Order, the preliminary injunction has prohibited the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on receipt of the FY 2017 Byrne JAG

funds for Evanston or any Conference members that faced an accept or decline deadline.

DOJ began distributing FY 2018 Byrne JAG awards in October of 2018. (PSOF ¶ 45.) In December of 2018, Plaintiffs filed their Amended Complaint, asserting that the Attorney General had again attached the unlawful notice, access, and Section 1373 compliance conditions (the "repeat conditions") to the FY 2018 JAG funds. Plaintiffs also alleged that the Attorney General imposed new unconstitutional conditions on the FY 2018 grants, namely:

1. **The Section 1644 compliance condition.** This condition requires the applicant's Chief Legal Officer to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. § 1644. (Byrne JAG Program FY 2018 Local Solicitation at 27, Ex. H to Pl.'s Request for Judicial Notice (RJN), Dkt. No. 62-2.) 8 U.S.C. § 1644 provides: "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.

2. **The harboring condition.** This condition prohibits the recipient jurisdiction from making any public disclosure "of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12." (*See* Albuquerque FY 2018 Byrne JAG Award ¶ 44, Ex. S to Pl.'s RJN, Dkt. No. 62-3.)

3. **The additional certification requirement.** This condition requires the applicant's Chief Executive to submit a "Certifications and Assurances by the Chief Executive of the Applicant Government." (Certifications

and Assurances by the Chief Executive of the Applicant Government, Ex. K to Pl.'s RJN, Dkt. No. 63-2.) The condition incorporates a requirement that the applicant's Chief Legal officer certify that the applicant government has no "law, rule, policy, or practice that would apply to the 'program or activity' to be funded" that would "(a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)." (State or Local Government: FY 2018 Certification, Ex. L to Pl.'s RJN, Dkt. No. 62-3.)

4. **The questionnaire condition**. This condition requires each applicant to answer the following questions:

> (1) Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with [the Department of Homeland Security (DHS)] or [Immigrations and Customs Enforcement (ICE)]?
> (2) Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meet the description in question 1?
> (3) If yes to either: Please provide a copy of each law or policy; Please describe each practice; Please explain how the law, policy, or practice complies with Section 1373.

(Byrne JAG Program FY 2018 Local Solicitation at 27-28, Ex. H to Pl.'s RJN.)

This Court recently issued a summary judgment opinion in which it held the Section 1644 compliance condition, harboring condition, and the additional certification requirement, as well as the repeat conditions, unlawful. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546 (N.D. Ill. Sept. 19, 2019). The

Court has not yet ruled on the legality of the questionnaire condition. The Court will refer to the seven conditions Plaintiffs seek to enjoin in this suit collectively as the "challenged conditions."

The Amended Complaint contains five counts. Counts I and II allege that the challenged conditions are *ultra vires* and violate the separation of powers, because absent a statutory provision or express delegation, only Congress is entitled to attach conditions to federal funds. Count III asserts that the challenged conditions violate the Spending Clause of the U.S. Constitution. Count IV alleges that the challenged conditions violate the Tenth Amendment's anti-commandeering doctrine. Count V charges that the challenged conditions are arbitrary and capricious in violation of the Administrative Procedure Act.

The Attorney General now moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to grant summary judgment in his favor on all counts of the Amended Complaint. Plaintiffs move for summary judgment in their favor on Counts I, II, and IV, and seek a permanent injunction prohibiting the Attorney General from imposing the challenged conditions on the receipt of Byrne JAG funds. Plaintiffs concede that if the Court grants summary judgment in their favor on Counts I, II, and IV, then Counts III and V

should be dismissed as moot. Plaintiffs further reserve their right, upon final judgment of the Court and pursuant to 28 U.S.C. § 2412, to seek reasonable attorneys' fees, expenses, and costs.

The Court will first address the jurisdictional arguments for dismissal, and then turn to the merits of the Counts at issue in Plaintiffs' Motion for Summary Judgment.

## II.   <u>LEGAL STANDARDS</u>

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of a complaint. See FED. R. CIV. P. 12(b)(1). The Attorney General asserts a facial challenge, as he argues that the Plaintiffs have not sufficiently alleged a basis of subject matter jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In a facial challenge to subject matter jurisdiction, a court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Plaintiffs bear the burden of establishing the elements necessary for jurisdiction. *See Silha*, 807 F.3d at 173.

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). A court entertaining a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged. *Tamayo v. Blagojevich*, 526

- 8 -

F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Id.*; see also FED. R. CIV. P. 8(a)(2).

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See FED. R. CIV. P. 56. A court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). In ruling on summary judgment, courts do not determine the truth of disputed matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. <u>DISCUSSION</u>

#### A. Evanston's Standing

The Attorney General argues that dismissal under Rule 12(b)(1) is necessary because Evanston lacks standing and the Conference lacks associational standing. To establish Article III standing, an individual plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). To establish injury in

fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

According to the Attorney General, Evanston cannot satisfy the injury in fact requirement because Evanston is a subgrantee of Chicago, and therefore is subject to the challenged conditions only to the extent that those conditions apply to Chicago itself. And Chicago is currently protected by an injunction in the *Chicago v. Barr* case from almost all of the conditions that Evanston challenges here. However, the Court has already considered and rejected this argument. (*See* Aug. 9, 2018, Order at 3-4.) The Attorney General does not dispute that subgrantees such as Evanston must supply any information and certifications, and agree to any conditions, that DOJ requires of all direct grant recipients. (PSOF ¶ 21.) Thus, as this Court has already held, an injunction that prohibits DOJ from enforcing the challenged conditions against Chicago "does not insulate Evanston" from the requirement to comply with those conditions. (Aug. 9, 2018, Order at 4.) Accordingly, Evanston faces a concrete and particularized injury that is clearly traceable to the Attorney General's actions and is likely to be redressed by a favorable decision in this case.

- 10 -

As a final argument on Evanston's standing, the Attorney General asserts that Evanston lacks standing to challenge the additional certification requirement because OJP has publicly announced that it is currently not enforcing this requirement against Chicago and its sub-recipients. This argument fails for the same reason the Court explained in its recent *City of Chicago* opinion. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546, at *7 (N.D. Ill. 2019) (the Attorney General's voluntary cessation of imposing certain grant conditions does not defeat standing or moot plaintiff's complaint). Thus, Evanston has standing to challenge the Byrne JAG conditions. The Court turns to the Conference's standing.

### B.  The Conference's Standing

The Attorney General additionally moves to dismiss the Conference from this action for lack of associational standing. This Court has already twice held that the Conference has associational standing to litigate this issue on behalf of its members. *See* Aug. 9, 2018, Order at 5-7; *City of Chicago v. Sessions*, No. 17 C 5720, 2017 WL 5499167, at *5 (N.D. Ill. 2017). In his Motion to Dismiss, the Attorney General "renews" his challenge to the Conference's associational standing and refers the Court to his brief in opposition to the preliminary injunction. (Def.'s Mot. at 10, 26, Dkt. No. 78.) Other than asserting he is

"renewing" his objection to the Conference's standing and referring the Court to an argument it has already considered and rejected, the Attorney General offers no explanation for why the Court should change its decision on standing.

Regardless, the Court will briefly note again why the Conference has associational standing. Associational standing requires that: (1) the Conference's members would otherwise have standing to sue in their own right; (2) the interests that the Conference seeks to protect are germane to its organizational purpose; and (3) neither the claim asserted, nor the relief requested requires the participation of individual Conference members in the lawsuit. *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011). The first requirement is met when even one member of the association shows that it would have standing to bring suit on its own behalf. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977). Thus, Evanston's standing alone would suffice to confer associational standing on the Conference. However, approximately 350 Conference members were directly allocated Byrne JAG funds in FY 2018, to say nothing of the potential number of Conference members who receive funds as subgrantees. (Joint Stip. ¶ 6, Dkt. No. 74-1.) Those 350 cities all have standing as they all face the injury of being obliged to comply with unlawful conditions; thus, the first requirement is

clearly met. (*See* Aug. 9, 2018, Order at 5.) The second requirement is met because the purpose of the Conference is to coordinate cities' interaction with the federal government, and this lawsuit seeks to prevent overreach by the Executive Branch and preserve local decision-making authority. (*See id.* at 6.) And the third requirement is satisfied because this suit raises a "pure question of law"—whether the Attorney General exceeded his statutory authority when imposing the challenged conditions on Byrne JAG funds—that is not contingent on evidence from any specific city. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-88 (1986). Therefore, as this Court has held twice before, the Conference has associational standing.

### C.  First Six Challenged Conditions

Plaintiffs are entitled to summary judgment on Counts I and II with respect to the notice, access, Section 1373 compliance, Section 1644 compliance, and harboring conditions, as well as the additional certification requirement. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546, at *10-14 (N.D. Ill. 2019) (holding those conditions *ultra vires*).

Plaintiffs additionally move for summary judgment on Count IV. This Count alleges a violation of the Tenth Amendment's anticommandeering doctrine, which limits Congress's ability to

issue orders directly to State and local governments. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). In their motion for summary judgment, Plaintiffs explain that they seek a declaration that 8 U.S.C. §§ 1373 and 1644 violate the anticommandeering doctrine, and therefore the Attorney General cannot impose compliance with these laws as a condition of accepting Byrne JAG funding. Plaintiffs are entitled to this relief. *See City of Chicago*, 2019 WL 4511546, at *10 ("[T]he Court's ruling that § 1373 violates the anticommandeering doctrine applies equally to § 1644. . .. [T]herefore compliance with § 1644 cannot be imposed as a condition of accepting Byrne JAG funds.")

However, the Court notes that the Amended Complaint includes, within Count IV, a request for a declaratory judgment that all challenged conditions violate the Tenth Amendment's anticommandeering principle. (*See* Am. Compl. ¶¶ 150, 157, Dkt. No. 46.) Plaintiffs presented arguments as to why all challenged conditions are *ultra vires* but did not argue that the challenged conditions *themselves* impermissibly commandeer state and local governments. Nor could they. *See City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 867 (N.D. Ill. 2018) ("No Tenth Amendment problem exists when a federal agency imposes grant conditions, because the Spending Clause empowers the federal government to offer funds in exchange for state action it could not otherwise demand.")

- 14 -

(citations omitted). Thus, to the extent Plaintiffs seek a declaration that the challenged conditions violate the anticommandeering doctrine, that is denied.

Because the Court granted summary judgment in Plaintiffs' favor on Counts I, II, and IV, Counts III and V need not be resolved and are dismissed as moot. *See City of Chicago,* 2019 WL 4511546, at *14.

### D. Questionnaire Condition

The parties cross-move for summary judgment on Counts I and II as to the questionnaire condition. The questionnaire condition requires a Byrne JAG applicant to describe any of its laws, policies, or practices that relate to communication with DHS and ICE and to provide an explanation of how those laws, policies, or practices comply with 8 U.S.C. § 1373. (Byrne JAG Program FY 2018 Local Solicitation at 27-28.) Plaintiffs argue that the Attorney General lacks statutory authority to impose this condition.

The Executive Branch has "no inherent authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature." *City of Chicago v. Sessions*, 888 F.3d 272, 295 (7th Cir. 2018) (citing *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986)), *reh'g en banc granted in part*, *opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814

- 15 -

(7th Cir. Aug. 10, 2018). This is because the power of the purse belongs to Congress, not the Executive. *See City of Chicago*, 888 F.3d at 283. Because the Attorney General's authority to attach conditions to Byrne JAG grants and to depart from the funding distribution formula mandated by 34 U.S.C. § 10156 is "strictly circumscribed," *id.* at 286, whether the questionnaire condition is *ultra vires* depends on whether Congress has delegated to the Attorney General, by statute, the authority to impose such a condition. Thus, the Court faces a question of statutory interpretation.

Statutory interpretation begins with the plain language of the statute. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). A court must "assume that the legislative purpose [of the statute] is expressed by the ordinary meaning of the words used." *Id.* (citations omitted). Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive. *Id.* The language and design of the statute as a whole may also provide guidance in determining the plain meaning of its provisions. *Id.*

The Attorney General identifies several statutory provisions that he claims give him the authority to impose the questionnaire condition. He first points to 34 U.S.C. § 10102, which sets forth the specific, delegated, and general powers of the Assistant

- 16 -

Attorney General (AAG) for the Office of Justice Programs. The Attorney General contends that § 10102(a)(6) authorizes the questionnaire condition. This section authorizes the AAG to "exercise such other powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." *See* 34 U.S.C. § 10102(a)(6). However, the Seventh Circuit has roundly rejected this provision as an independent source of authority for the Attorney General to create grant conditions, and the Court need not address it again. *See City of Chicago*, 888 F.3d at 285 ("[T]he Attorney General's argument… that the 'including' clause itself is a stand-alone grant of authority to the [AAG] to attach any conditions to any grants in that subchapter… is untenable.") This argument fails.

The Attorney General next points to §§ 10102(a)(2) and (a)(4), which require the AAG to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice," and "maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice." 34 U.S.C. §§ 10102(a)(2), (a)(4). This Court recently rejected the argument

that the "maintain liaison" language confers authority on the Attorney General to impose immigration enforcement-related conditions on Byrne JAG funds. *See City of Chicago*, 2019 WL 4511546, at *12. The Court sees no reason to depart from that conclusion here. Sections 10102(a)(2) and (a)(4) are more plausibly read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments. *See id. (citing City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019)). The AAG's duty to "maintain liaison… in matters relating to criminal justice" does not provide the Attorney General authority to require would-be Byrne JAG grantees to detail their laws, policies, and practices that relate to how their employees communicate with DHS or ICE, nor how each complies with Section 1373. Accordingly, this argument fails.

The Attorney General also contends that the Byrne JAG statute itself authorizes the imposition of the questionnaire condition, citing 34 U.S.C. § 10153(a). Section 10153(a) reads, in relevant part, "the chief executive officer of a State or unit of local government shall submit an application to the Attorney General… *in such form as the Attorney General may require*." 34 U.S.C. § 10153(a) (emphasis added). Defendant contends that the italicized language authorizes the Attorney General to "require

- 18 -

applicants to include certain information about any laws or policies regarding communication with federal immigration authorities." (Def.'s Mot. at 14.) According to the Attorney General, the authority to dictate the "form" of a Byrne JAG application includes the authority to require applicants to provide additional information in the application.

However, the plain language of § 10153(a) does not support this reading. Discussing the "form" language in § 10153(a) in the context of the Section 1373 compliance condition, the Southern District of New York noted that "the Attorney General's authority to determine the 'form' of the application does not include the ability to dictate the 'substance' of which laws an applicant must comply with as a condition of grant funding." *States of New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 230 (S.D.N.Y. 2018). That court explained that the definition of "form"—"the outer shape, structure, or configuration of something, *as distinguished from its substance or matter*"—indicates that § 10153(a) does not authorize the Attorney General to impose substantive conditions on Byrne JAG funds. *Id.* (citing Black's Law Dictionary (10th ed. 2014) (emphasis added)). Similarly, the Attorney General's authority to determine the "form" of the application does not constitute a grant of authority to require any additional information his office wishes.

Moreover, this section differentiates between "form" and "application" in such a way that indicates the Attorney General's ability to determine "form" does not grant him authority to alter the substance of an application. "Form" is used twice in § 10153: once in § 10153(a) ("the chief executive officer of a State or unit of local government shall submit an application to the Attorney General… in such form as the Attorney General may require") and again in § 10153(a)(5):

> Such application shall include the following… A certification, made *in a form acceptable to the Attorney General*… that (a) the programs to be funded by the grant meet all the requirements of this part; (b) all the information contained in the application is correct; (c) there has been appropriate coordination with affected agencies; and (d) the application will comply with all provisions of this part and all other applicable Federal laws.

34 U.S.C. § 10153(a)(5) (emphasis added). Section 10153(a)(5) allows the Attorney General to determine the "form" of the certification while mandating precisely what substance the certification must include. This indicates that in § 10153(a) Congress intended "form" to mean the configuration or structure of the application, just as in § 10153(a)(5) it intended "form" to mean the structure of a strictly circumscribed set of requirements.

This interpretation is consistent with the Seventh Circuit's characterization of § 10153(a) as "explicit authority to… determine the form of the application and the certification." *City*

*of Chicago*, 888 F.3d at 283; *see also States of New York*, 343 F. Supp. 3d at 229 ("§ 10153… sets forth largely technical and ministerial application requirements pertaining to the grant itself."). Importantly, the Seventh Circuit held that none of the provisions in the Byrne JAG statute, including § 10153(a), "grant the Attorney General the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *City of Chicago*, 888 F.3d at 284. The Attorney General himself describes the questionnaire condition as "requiring modest cooperation with federal law enforcement responsibilities in the immigration setting." (Def.'s Mot. at 7.) Thus, the Attorney General apparently concedes that the questionnaire condition imposes exactly the type of burden on State and local governments that the Seventh Circuit has held the Byrne JAG statute does not authorize.

Furthermore, if the Attorney General's ability to dictate "form" worked the way he argues it does, the effect would be to give his office authority carte blanche to require applicants to divulge whatever information the Attorney General wishes to extract. Because Congress does not hide elephants in mouseholes, *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006), such a broad grant of discretion would be far more explicit. Accordingly, Section

- 21 -

10153(a) does not authorize the Attorney General to impose the questionnaire condition.

Indeed, there is only one part of 34 U.S.C. § 10153 that appears to give the Attorney General any authority to determine the substance of the application: § 10153(a)(4). This part states that the Byrne JAG application shall include:

> An assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) *as the Attorney General may reasonably require*.

34 U.S.C. § 10153(a)(4) (emphasis added). However, as Plaintiffs have correctly noted, the questionnaire condition is not authorized under § 10153(a)(4) because the condition does not concern "programmatic" or "financial" data, records, or information. The meaning of "financial" is self-evident and clearly does not apply to the information at issue in the questionnaire condition. The Court interprets "programmatic" to mean information related to the program to be funded by the JAG grant. That is how this term is used elsewhere within § 10153 and in other sections of the Byrne JAG statute. *See* 34 U.S.C. § 10153(a)(5)(A) (authorizing the Attorney General to require the applicant to certify that "the programs to be funded by the grant meet all the requirements of this part"); 34 U.S.C. § 10152 (authorizing the Attorney General to make grants for criminal

- 22 -

justice "programs"). An applicant's descriptions of its laws, policies, and practice that relate to whether, when, and how its employees may communicate with DHS or ICE, and how its policies comply with Section 1373, do not constitute programmatic information. One other court has already so ruled. *See City of Los Angeles v. Sessions*, No. CV 18-7347, 2019 WL 1957966, at *5 (C.D. Cal. 2019) (holding that § 10153(a)(4) does not authorize the questionnaire condition because "Congress has limited the information that the Attorney General could require of States and local governments to programmatic and financial information"). Thus, § 10153(a)(4) does not authorize the Attorney General to impose the questionnaire condition.

Finally, the Attorney General argues that his office has historically imposed a large number of special conditions on Byrne JAG funds, most of which are not expressly authorized by statute. (Def.'s Mot. at 6-7; Def.'s Reply at 3-4, Dkt. No. 87.) Accordingly, the Attorney General concludes that Plaintiffs' argument "proves too much," as under Plaintiffs' analysis, it would seem that many of the past and current Byrne JAG funding conditions would be invalid as *ultra vires*. This argument does the Attorney General no favors. Apart from suggesting that perhaps the Attorney General has imposed many conditions on Byrne JAG funds that are not statutorily authorized—the validity of which are not before

the Court in this suit—this argument does not identify any source of statutory authority for the questionnaire condition.

For the foregoing reasons, the Attorney General lacks statutory authority to impose the questionnaire condition, and it is *ultra vires*. Plaintiffs' Motion for Summary Judgment on Counts I and II is granted as to the questionnaire condition.

### E.  Injunction

With the merits decided, the Court turns to Plaintiffs' request for a permanent injunction in this case. Plaintiffs currently have a preliminary injunction that prohibits the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on receipt of the FY 2017 Byrne JAG funds for Evanston or any Conference members that faced an accept or decline deadline in 2018. (*See* Aug. 9, 2018, Order at 11; Aug. 29, 2018 Order (7th Cir.).) Plaintiffs now seek a permanent injunction that prohibits the Attorney General from imposing any of the challenged conditions in all future years of the Byrne JAG program. Plaintiffs seek a "program-wide" injunction—that is, one that is nationwide in scope. The Court will first consider whether Plaintiffs are entitled to a permanent injunction and then assess the injunction's proper scope.

### 1.  Permanent Injunction

The Court may issue permanent injunctive relief if the moving party demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The Attorney General does not engage with these four requirements in its briefing. Instead, he argues that any injunction in this case should be limited to Evanston. Thus, it appears to the Court that the Attorney General does not object in principle to a permanent injunction of the challenged conditions. Regardless, Plaintiffs carry the burden to demonstrate that they are entitled to such an injunction, so the Court will proceed with its analysis without any input from the Attorney General.

Regarding the first and second factors, Plaintiffs have suffered irreparable injuries from the Attorney General violating the separation of powers doctrine, and the resultant law enforcement budget uncertainty among all Conference members who receive Byrne JAG funds. As this Court has noted before, a constitutional injury alone can constitute irreparable harm. *See City of Chicago*, 321 F. Supp. 3d at 878 (citing 11A Wright & Miller, Federal Practice & Procedure § 2948.1 (2d ed. 1995)).

- 25 -

Evanston and other Conference members face such an injury here, as the Attorney General subjects their receipt of Byrne JAG funds on unconstitutional conditions. Additionally, the choice that Evanston and other Conference members face—suffer the constitutional injury or decline Byrne JAG funds entirely—is itself sufficient to establish irreparable harm. *See* Aug. 9, 2019, Order at 8; *City of Chicago*, 321 F. Supp. 3d at 878 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)); *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 538 (N.D. Cal.), *appeal dismissed as moot sub nom. City & Cty. of San Francisco v. Trump*, No. 17-16886, 2018 WL 1401847 (9th Cir. 2018). Money damages cannot adequately compensate for the constitutional injuries that Plaintiffs face. Accordingly, Plaintiffs have demonstrated the first two required elements for a permanent injunction.

Third, considering the balance of hardships between Plaintiffs and the Attorney General, a remedy in equity is warranted. Evanston and other Conference members would suffer significant hardship if they had to either accept unlawful conditions or forgo the Byrne JAG funds. In contrast, as this Court has already found, the Attorney General would suffer "little hardship" if he were forbidden from imposing unlawful conditions while otherwise being able to distribute Byrne JAG funds as usual.

See *City of Chicago*, 2019 WL 4511546, at *15; *City of Chicago*, 321 F. Supp. 3d at 878.

And fourth, the public interest is served by a permanent injunction in this case, for the same reason the Court recently articulated in the *Chicago v. Barr* case. It is clearly in the public's interest to enjoin the imposition of conditions that violate the separation of powers doctrine. See *City of Chicago*, 2019 WL 4511546, at *15. Thus, Plaintiffs have satisfied all four requirements for permanent injunctive relief as to DOJ's imposition of the challenged conditions.

## 2. Scope of Injunction

The Court turns to its assessment of the appropriate scope of the injunction. When "district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001). The scope of injunctive relief is dictated by the extent of the violation established. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id*. When a court believes the underlying right to be highly significant, "it may write injunctive relief as

broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011).

The preliminary injunction in this case prohibits the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on any Conference members who faced the "accept or decline" deadlines for the FY 2017 grants. Plaintiffs now seek an injunction that covers all future Byrne JAG program years. The Court finds, for the same reasons it recently articulated when granting an injunction for all future program years in the *City of Chicago* case, that this relief is warranted. *See City of Chicago*, 2019 WL 4511546, at *16 (an injunction covering all future Byrne JAG program years is the appropriate remedy given the nature of the legal violation and DOJ's history of repeatedly imposing conditions this Court has held to be unlawful).

Additionally, Plaintiffs seek "program-wide" relief, that is, a nation-wide injunction that prohibits the Attorney General from imposing the challenged conditions on any Byrne JAG recipient. However, such an injunction would be a significant expansion of the preliminary injunction in this case, which covered only Conference members who faced accept or decline deadlines. Given that the validity of a national injunction in this context is currently on appeal before the Seventh Circuit, *see City of Chicago*

- 28 -

*v. William Barr*, No. 18-2885 (7th Cir.), the Court declines to issue such an injunction in this case now.

In the absence of a nationwide injunction, Plaintiffs request an injunction that covers all impacted Conference members. This approach is appropriate as it is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702. Furthermore, as the Seventh Circuit has noted, such an injunction is tailored to "the parties actually before the court who have demonstrated a right to the relief." (*See* Aug. 29, 2018, Order.)

The Attorney General argues that the Court should limit injunctive relief to only those Conference members that, before summary judgment, affirmatively requested relief from the challenged conditions, demonstrated their authorization to seek such relief, and agreed to be bound by the results of this litigation. Citing the fact that the Conference has a diverse membership, which includes cities that want to be bound by the challenged conditions, Defendant contends that the scope of the injunction should be limited to those members who do not want to be bound by the challenged conditions. The Attorney General does not cite any cases in which a court held that an association had standing to pursue relief for its members but limited the scope of an injunction to individual association members who came forward

with individualized proof that they were authorized to, and wished to, obtain the requested relief. This argument fails because an association that establishes standing and prevails is entitled to obtain relief for all of its impacted members. *See Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011). This is the reason that the third requirement for associational standing is that "neither the claim asserted, nor the relief requested requires the participation of individual association members in the lawsuit." *Id*. (citing *Hunt*, 432 U.S. at 343). Put simply, the Court has already determined in its associational standing analysis that the nature of the relief requested in this case does not require the participation of individual members in the lawsuit. The Court is not inclined to reverse course now that it is in the equitable remedy phase and require the participation of individual members.

This holding is in line with the doctrine of associational standing, which recognizes that:

> [T]he primary reason people join an organization... is often to create an effective vehicle for vindicating interests that they share with others. The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.

*Brock*, 477 U.S. at 290 (internal quotations and citation omitted).

Moreover, the fact that some Conference members may support the policies embodied by the challenged conditions does not mean it would be inequitable to include those members within the scope of the injunction. These cities still suffer an affront to their sovereignty when the Attorney General is permitted to direct their behavior in an unauthorized way. (*See* Aug. 9, 2018, Order at 9.) This injury is not "peculiar to the individual member concerned" and the fact and extent of the injury do not "require individualized proof." *Brock*, 477 U.S. at 287 (discussing, in the associational standing context, the requirement that neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit). Indeed, Conference members that want to implement their own, pro-immigration enforcement policies are seeking to exercise the local sovereignty that the Tenth Amendment and this permanent injunction are designed to protect. (*See* Aug. 9, 2018, Order at 9.) Additionally, the Court notes that although the Attorney General does not have the authority to force Conference members to cooperate with federal immigration enforcement efforts as a condition to receiving Byrne JAG funds, "that does not mean that such cooperation is not allowed." *City of Chicago*, 888 F.3d at 296 n.3 (Manion, J., concurring in part and dissenting in part). This eliminates any concerns the Court may have had about extending the

- 31 -

permanent injunction to include all Conference members, including those who do not want the relief at hand.

Finally, the Attorney General asserts that the Court must limit the injunction to those Conference members that agree to be bound by it, because certain Conference members are suing him separately over the challenged conditions. The Attorney General is concerned that those members who are maintaining their own lawsuits should not be able to obtain one judgment in this case and a different judgment in their individual case. The Court has already considered this argument and rejected it. *See City of Chicago*, 2017 WL 5499167, at *5 (citing *Chicago-Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 281 n.3 (7th Cir. 1978); *Hunt,* 432 U.S. at 343). If the Court had reached an adverse judgment for Plaintiffs in this case, *stare decisis* would protect the Attorney General against further litigation. *Id.*

Therefore, the Court grants a permanent injunction against the imposition of the challenged conditions upon Evanston and any Conference member that has been allocated, applied for, or has been awarded Byrne JAG funds in FY 2017, FY 2018, and in all future grant years.

## IV.  CONCLUSION

For the reasons stated herein, the Attorney General's Motion to Dismiss (Dkt. No. 77) is denied. Plaintiffs' Motion for Summary

Judgment (Dkt. No. 52) is granted in part and denied in part as follows: the Court grants summary judgment for the Plaintiffs on Counts I and II with respect to all challenged conditions, and on Count IV insofar as Plaintiffs are entitled to a declaration that Sections 1373 and 1644 violate the anticommandeering doctrine and the Attorney General cannot require compliance with these statutes as a condition of Byrne JAG funds. The Court dismisses Counts III and V as moot.

**IT IS SO ORDERED.**

_____

    Harry D. Leinenweber, Judge
    United States District Court

Dated: 9/26/2019