UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CITY OF EVANSTON and THE UNITED STATES CONFERENCE OF MAYORS,**<br><br>*Plaintiffs*,<br>v.<br><br>**WILLIAM P. BARR, in his official capacity as Attorney General of the United States,**<br><br>*Defendant.* | **Case No. 1:18-cv-04853**<br><br>**Hon. Harry D. Leinenweber** |

**DEFENDANT'S OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR ATTORNEY FEES</u>**

<blockquote>
JOSEPH H. HUNT
Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

<u>*/s/ Charles E.T. Roberts*</u>
Daniel D. Mauler (VA Bar No. 73190)
Charles E.T. Roberts (PA Bar No. 326539)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Phone: (202) 305-8628
Fax: (202) 616-8470
E-Mail: charles.e.roberts@usdoj.gov

*Counsel for Defendant*
</blockquote>

**TABLE OF CONTENTS**

INTRODUCTION..............................................................................................................................1

BACKGROUND ..............................................................................................................................1

ARGUMENT....................................................................................................................................2

    I.   The Court Should Not Award Any Fees Until Final Judgment Has Been Entered....................2

    II.  USCM Is Not Entitled To Any Fees Or Expenses Under EAJA...................................................3

          A.   USCM Is Not Eligible Under EAJA Because It Was Not a Real Party in Interest
              and It "Stood in the Shoes" of Member Cities That Are Not Eligible Under
              EAJA .................................................................................................................................3

          B.   The Court Should Deny Any Award Entirely Because the Government's Position
              Was Substantially Justified........................................................................................6

          C.   Special Circumstances (Namely Ineligible Evanston's Participation and USCM's
              Litigation *on Behalf of* Ineligible Members) Render Any Award Unjust ...................10

    III. If the Court Finds USCM Entitled to Fees and Expenses, It Should Still Sharply Reduce Any
        Award Because of the Petition's Deficiencies ...................................................................................11

          A.   Block-Billed Time Should Be Entirely Excluded or at Least Significantly
              Reduced...................................................................................................................12

          B.   Vague Entries Should Be Excluded........................................................................13

           C.   Excessive or Unreasonable Entries Should Be Excluded .......................................14

CONCLUSION................................................................................................................................15

## INTRODUCTION

Defendant opposes the United States Conference of Mayors' (USCM) motion for $182,230.59 in attorney fees and expenses under the Equal Access to Justice Act (EAJA). USCM Mot., ECF No. 100. That statute does not authorize an award every time the Government loses on a claim in litigation, instead strictly proscribing recovery in many circumstances. *See* 28 U.S.C. § 2412(d)(1)–(2).

To begin with, because Defendant has appealed from this Court's grant of summary judgment, any fee award would be premature until final judgment has been entered. USCM is not entitled to any award under EAJA for three reasons: it is ineligible; the Government's position was substantially justified; and "special circumstances make an award unjust." *Id.* § 2412(d)(1)(A). And if the Court does not deny the motion outright, any award should be substantially reduced for three separate reasons: block-billing, vague entries, and unreasonable or excessive entries, which pervade USCM's fee and expense records. *See* Haussman Decl. Exs. A & B, ECF No. 100-3. The Court should therefore deny USCM's motion entirely, or, alternatively, limit any fee award substantially.

## BACKGROUND

This case focused on whether the Department of Justice (DOJ) can require recipients of Byrne JAG funds to refrain from publicly disclosing federal law enforcement information for the purpose of shielding from detection unlawfully present aliens and fugitives; to collect certain information from the recipient of a subaward regarding any policies about communication or cooperation with the Department of Homeland Security or Immigration and Customs Enforcement; and to certify the absence of any laws or policies that impede the Federal Government's exercise of its authority under certain specifically-identified statutes (the new FY 2018 conditions). While this case did involve challenges to notice, access, and Section 1373 conditions similar to those this Court previously considered in the FY 2017 Byrne JAG program, the Government did not re-litigate those issues. Instead, the Government focused the litigation on new conditions that were matters of first impression in this

Court. And the case involved serious questions about USCM's standing and the appropriate scope of injunctive relief. In short, this case involved a host of issues, most of them untested in this Court.

Following this Court's grant of summary judgment in USCM's favor, entrance of a permanent injunction, ECF Nos. 93, 94, and order to file a fee petition and bill of costs, ECF No. 96—but before the Government's appeal in this case had been timely filed, *see* Notice of Appeal, ECF No. 103—USCM filed this motion seeking an award under EAJA.

## ARGUMENT

### I.     The Court Should Not Award Any Fees Until Final Judgment Has Been Entered.

As a threshold matter, any fee award would be premature until USCM has a "final judgment," meaning "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). Conservation of judicial and party resources warrants waiting to determine USCM's entitlement to any award until this case's appeal, *City of Evanston v. Barr*, No. 19-3358 (7th Cir. 2019), has been fully resolved in USCM's favor. If it is resolved against USCM, no award would be appropriate and any award this Court has made would need to be clawed back. If the appeal is partially resolved against USCM, further briefing or party settlement negotiations on the matter would be both necessary and prudent. And however the appeal is resolved, the parties and the Court would likely benefit from addressing a single complete fee petition, rather than piecemeal records. Moreover, because of the appeal, USCM might not yet be or remain a "prevailing party" under EAJA. *See, e.g.*, *Melka Marine, Inc. v. United States*, 29 F. App'x 594, 598 (Fed. Cir. 2002) ("The non-appealability *requirement* of § 2412(d)(1)(B) has been interpreted to mean that '[t]he 30–day EAJA clock begins to run after the time to appeal that "final judgment" has expired.'" (emphasis added) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991)). In short, unless the Court finds USCM is not entitled to any award, both the interest of judicial economy and EAJA's eligibility criteria counsel awaiting the results of the appeal.

**II.     USCM Is Not Entitled To Any Fees Or Expenses Under EAJA.**

In the event that the Court rules on the merits of USCM's Motion at this juncture, the Court should deny any award.  EAJA sets forth four pleading requirements for fees and expenses: (1) the applicant must demonstrate that it is a "prevailing party;" (2) the applicant must demonstrate that it is eligible for an award; (3) the applicant must provide an itemized statement from an attorney or expert stating the actual time expended and the rate charged; and (4) the applicant must allege that the government's position was not substantially justified.  28 U.S.C. § 2412(d)(1)(B).  The statute further defines "party" to exclude entities, except 501(c)(3) organizations, that exceed $7,000,000 net worth or 500 employees at the time the civil action was filed.  *Id.* § 2412(d)(2)(B).  The applicant bears the burden of establishing eligibility, a question that is "particularly acute in this case where the lead plaintiff appears ineligible for fees."  *Sierra Club, Ill. Chapter v. Brown*, 1999 WL 515496, at *2 (N.D. Ill. July 13, 1999); *see Estate of Woll by Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994).  And the court may also deny an award if special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).  Additionally, the statute "amounts to a partial waiver of sovereign immunity [and] must be strictly construed in favor of the United States."  *Ardestani v. INS*, 502 U.S. 129, 137 (1991).

USCM is not entitled to any fee award for three reasons: (A) USCM was not a real party in interest and "stood in the shoes" of its EAJA-ineligible members to litigate this case, rendering the Conference ineligible; (B) the Government's position was substantially justified; and (C) any award would be unjust because of both (EAJA-ineligible) Evanston's presence in this case and USCM's litigation solely on behalf of its EAJA-ineligible members like Evanston.

> **A.     USCM Is Not Eligible Under EAJA Because It Was Not a Real Party in Interest and It "Stood in the Shoes" of Member Cities That Are Not Eligible Under EAJA.**

In this litigation, USCM took the position that it was merely standing in the shoes of its members.  *See, e.g.*, Pls.' Combined Reply 6-7, ECF No. 84 ("The record is clear: the Conference is suing on behalf of its members . . . .  The Conference has never claimed to be bringing this lawsuit on

behalf of the Conference itself . . . ."). In other words, the Conference is a mere shell, wrapped around a number of cities, who are the real parties in interest. The cities, however, are not eligible for fees under EAJA. *See, e.g.*, *City of Brunswick v. United States*, 849 F.2d 501, 503 (11th Cir. 1988) (reversing a fee award for a city with fewer than 20,000 residents because it "clearly exceeded EAJA's limit" and could not recover under the Act). It is inconceivable that Congress would have intended for a mere associational shell to circumvent Congress's careful delineation of EAJA's net worth requirements. The Conference vigorously argued that it stood in the shoes of its members for standing purposes. It must live with that result now.

When it enacted EAJA, Congress did not intend to "subsidize through subsection (d) the purchase of legal services by large entities easily able to afford legal services." *Unification Church v. INS*, 762 F.2d 1077, 1082 (D.C. Cir. 1985). Accordingly, when eligible and ineligible plaintiffs join in the same lawsuit, some courts consider which plaintiff is the real party in interest to determine eligibility. *See id.* at 1081–82. For these courts, "the essential question is whether there is some relationship or agreement among all or some of the various plaintiffs, either explicit or implicit, permitting a plaintiff, which would obviously not qualif[y] for an award, . . . [to] receive free legal services if its side were to prevail." *AARP v. EEOC*, 873 F.2d 402, 405 (D.C. Cir. 1989) (second and third alterations and omission in original) (quoting *Unification Church*, 762 F.2d at 1082). Other courts find an entity ineligible if it either represents a group that includes ineligible entities or even represents a group of entities whose aggregate net worth would render them ineligible. *See Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 674 (6th Cir. 1992) (denying fees to a trade association because many of its members were EAJA-ineligible). Either way, "[t]he question of eligibility is particularly acute in this case where the lead plaintiff appears ineligible for fees." *Sierra Club, Ill. Chapter*, 1999 WL 515496, at *2. And "[f]ailure to qualify as an EAJA party ends the fee inquiry." *Id.* (citing *Comm'rs of Highways of Towns of Annawan v. United States*, 684 F.2d 443, 445 (7th Cir. 1982)).

— 4 —

USCM litigated this case alongside and on behalf of a member city that is ineligible for fees under EAJA: Evanston. *See, e.g.*, *City of Brunswick*, 849 F.2d at 502. Because USCM litigated on behalf of member cities like Evanston—despite the Government's position that USCM was not entitled to obtain relief on behalf of its members—both parties were effectively represented by the same counsel. *See AARP*, 873 F.2d at 405–06 (noting that courts should consider "whether there is one counsel representing several plaintiffs of disparate size or wealth, especially where the size or wealth of one or more of those plaintiffs would likely disqualify it from recovering fees" when determining the real parties in interest under EAJA).[1] That ineligible city was the real party in interest, perhaps along with USCM's other (EAJA-ineligible) members. At bottom, even though USCM is a 501(c)(3) organization, it "has never claimed to be bringing this lawsuit on behalf of the Conference itself," Pls.' Combined Reply 6-7, and was not a real party in interest. It should not recover fees.

USCM is also ineligible because most—if not all—of USCM's members are ineligible for fees under EAJA given their net worth; and their aggregate net worth certainly exceeds EAJA's cap. To assert standing, USCM argued it "st[ood] in the shoes of its members" and was "suing on behalf of its members." *Id.* at 6–8. Over the Government's opposition, this Court then found USCM had standing only because of those (EAJA-ineligible) members' standing. *City of Evanston v. Barr*, 2019 WL 4694734, at *4–5 (N.D. Ill. Sept. 26, 2019). USCM now seeks to step out of those same shoes for the fee analysis, effectively allowing ineligible entities to litigate their interests at the Government's expense via a representational organization. *Cf. Nat'l Truck Equip. Ass'n*, 972 F.2d at 674 ("When businesses have the economic power to pursue litigation against the government without being deterred by the costs, [EAJA's purposes] are undermined by an award to those businesses. The same

---

[1] Indeed, the docket lists USCM's lead counsel as counsel for Evanston as well. And USCM's billing records reflect frequent, prolonged coordination with Evanston's city attorney, as well as other member cities.

result occurs when a trade association's membership also contains a number of companies who can readily afford the costs to protect their own interests."). This Court should foreclose that end-run around EAJA's purpose and find USCM ineligible at the outset.

In the alternative, "[i]f a court does award fees, it may reduce the fees in proportion to the number of eligible plaintiffs and examine more closely which plaintiff performed what work in support of the litigation." *Sierra Club, Ill. Chapter*, 1999 WL 515496, at *1–2. If this Court does not find USCM ineligible, the Government's position substantially justified, or any award unjust, it should still reduce USCM's overall fees by half given ineligible Evanston's active involvement in the case. *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 393–94 (2d Cir. 1985); *Citizens Council of Del. Cty. v. Brinegar*, 741 F.2d 584 (3d Cir. 1984).

### B. The Court Should Deny Any Award Entirely Because the Government's Position Was Substantially Justified.

EAJA does not authorize an award if the Government's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "The outcome of a case is not conclusive evidence of the justification for the government's position." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). Instead, courts should evaluate "the factual and legal support for the government's position throughout the entire proceeding," and rarely rely on superficial criteria like the case's outcome or the stage at which the case was decided. *Id.* at 1079–80. Substantial justification is a different standard than substantial evidence and a lower standard than at summary judgment. *Id.* at 1080 (citing *Pierce v. Underwood*, 487 U.S. 552, 568–69 (1988)). The Government's position is substantially justified when it is "grounded in '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.'" *Id.* (quoting *Phil Smidt & Son, Inc. v. NLRB*, 810 F.2d 638, 642 (7th Cir. 1987)). In other words, a position "can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct." *Pierce*, 487 U.S. at 566 n.2.

Because the Government relied on reasonable arguments and there was no binding precedent

on the new issues presented in this case, its positions were substantially justified and USCM is not

entitled to fees and expenses under EAJA.

This case focused on new conditions DOJ sought to attach to FY 2018 Byrne JAG funds. While

this case did involve conditions substantially similar to those attached to the FY 2017 grants, DOJ

focused its briefing on the conditions new to this Court.[2]  Moreover, neither set of conditions was the

subject of a final, unappealable judgment at the outset of this litigation.  Because of this, DOJ needed to

include the FY 2017 conditions in the FY 2018 grants to preserve its right to enforce the conditions if

it prevails on appeal.  Because each grant works like a contract, the text of challenged conditions needs

to be included each year, even if an injunction is in place covering specific conditions.  Under those

circumstances, the text of the condition would appear in a grant, but DOJ would honor the injunction

and refrain from enforcing the relevant condition.[3]  In other words, DOJ does not have the luxury of

prevailing on appeal and then, later, inserting conditions into previously issued grant programs.  And,

equally importantly, the previous case did not answer questions regarding new conditions that appeared

in FY 2018, USCM's standing, or the scope of relief in this case.

Significantly, this case raised an important question whether an association can attain injunctive

relief for members it does not adequately represent, including some that may not favor or want such

relief (*i.e.*, USCM's standing); and it also tested the appropriateness of an effectively nationwide

---

[2] DOJ made clear that it recognized the Court's prior ruling, respectfully disagreed, and incorporated its arguments in support of those conditions only "to preserve them for further review." Def.'s Reply 1 n.1, ECF No. 87.  DOJ then focused its briefing on the new conditions that were matters of first impression for the Court in this case.

[3] Indeed, DOJ never sought to stay the district court's decision pending appeal, which meant that grant money was disbursed to USCM members under the FY 2017 grants and DOJ did not, as USCM now claims, "ignore[] judicial decisions" over those grants.  USCM's Mot. 1.

injunction.[4]   In other words, this case's resolution was far from the foregone conclusion that USCM now argues.  Indeed, this case itself remains the subject of an appeal, *City of Evanston v. Barr*, No. 19-3358 (7th Cir. 2019), making any decision on substantial justification premature.  *See supra* Part I.  From the new FY 2018 conditions to the novel standing question, DOJ made reasonable arguments grounded in existing statutes, regulations, and case law.  *See generally* Def.'s Mem. in Support of Mot. To Dismiss or in the Alternative, Mot. For Summ. J. 9–33, ECF No. 78 (arguing standing, merits, and scope of relief); Def.'s Reply 3–19, ECF No. 87 (same).  A reasonable person could think those arguments correct, so recovery under EAJA is barred.  *Pierce*, 487 U.S. at 566 n.2.

USCM's arguments to the contrary misconstrue the law on substantial justification and belittle the new, untested issues in this case:

First, the resolution of this case at summary judgment has no significant bearing on the *reasonableness* of the Government's positions.  *See Hallmark Constr. Co.*, 200 F.3d at 1079–80.  Thus, according to the Seventh Circuit in *Hallmark*, USCM's attempt to invert the presumption that *surviving* a motion to dismiss and a motion for summary judgment demonstrates substantial justification is incorrect.  *See* USCM Mot. 7–8.

Second, the Court's disagreement with DOJ's positions does not mean those positions were unreasonable.  *Hallmark Constr. Co.*, 200 F.3d at 1079.

Third, USCM's focus on the conditions similar to those enjoined for FY 2017 ignores the significant new issues this case presented, as well as the fact that no final, unappealable precedent had yet foreclosed DOJ's actions for FY 2018.  Given the active litigation over the FY 2017 conditions, DOJ would have been remiss to waive its arguments on similar conditions for subsequent fiscal

---

[4] Indeed, one member of the Seventh Circuit panel in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), agreed with the Government that a nationwide injunction was inappropriate for the FY 2017 conditions.  *Id.* at 299–300 (Manion, J., concurring in part and dissenting in part).

years—apparently the only reasonable position under USCM's view. Under the circumstances, DOJ's decision to re-impose immigration conditions was reasonable and appropriate. Byrne JAG is a nationwide program, and although this Court and a handful of others had preliminarily enjoined use of the FY 2017 conditions, those conditions still applied to grantees in a host of States and jurisdictions not subject to an injunction. Thus, in issuing its FY 2018 Byrne JAG awards, DOJ re-imposed the FY 2017 conditions but posted publicly that it would not enforce those conditions against jurisdictions that had the benefit of an injunction. *See* U.S. Dep't of Just., Off. of Just. Programs, *Legal Notices Pertaining to FY 2018 Awards*, https://www.ojp.gov/funding/Explore/LegalNotices-AwardReqts.htm#2018-details (last visited Jan. 17, 2020). USCM's characterization that the Attorney General "defiantly re-imposed effectively the same conditions on FY 2018 Byrne JAG funds," USCM Mot. 5, ignores the reality that DOJ never sought to enforce the FY 2017 conditions against USCM members, and publicly stated as much.

Fourth, USCM's argument on the Court's "strong language against the Attorney General's position in discussing the merits of key issues," USCM Mot. 9, side-steps the new issues presented in this case: the untested FY 2018 conditions, USCM's standing, and the appropriate scope of relief. The Court's decisions on those issues trod new ground and, though ultimately resolved against the Government, did not pass on the reasonableness of the Government's positions.

Fifth, the Government need not have changed position on the FY 2017 conditions until a final, unappealable decision required it to do so. And USCM's argument that the Government should have changed position sooner, USCM's Mot. 9–10, again tellingly omits mention of the new FY 2018 conditions and standing issue over which the Government had no warning from this Court. One line in another case's transcript does not determine the substantial justification of the Government's position in this case, involving different, complex issues the Government argued reasonably and in good faith under the law. The Court should therefore deny the motion in its entirety.

— 9 —

**C.** **Special Circumstances (Namely Ineligible Evanston's Participation and USCM's Litigation *on Behalf of* Ineligible Members) Render Any Award Unjust.**

The "special circumstances" exception to EAJA is a "'safety valve' [that] . . . gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 96-1418, at 11 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. The participation of an ineligible party may make any fee award for another, potentially eligible party unjust. *State of La., ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir. 1988). In such circumstances, courts ask whether "the party ineligible for fees is fully willing and able to prosecute the action"—in which case an award for the eligible party would be unjust—or whether "the ineligible party's participation is nominal or narrow"—in which case the eligible party may justly receive fees. *Id.* An ineligible non-party's control or influence of the litigation decisions by an eligible party may also render fees inappropriate. *See Nat'l Ass'n of Mfrs. v. U.S. Dep't of Labor*, 159 F.3d 597, 603 (D.C. Cir. 1998).

Any fee award for USCM would be unjust because Evanston was fully willing and able to press this case, and the city's participation was substantial. This view accords with EAJA's primary purpose to combat the imbalance between the Government and the *individual* who faces significant litigation costs. *See Lee*, 853 F.2d at 1223 n.22. Numerous billing entries reflect coordination with Evanston's city attorney and time spent on "Chicago litigation" or communicating with Chicago (also an EAJA-ineligible USCM member). *E.g.*, Haussmann Decl. Ex. at A 2, 4, 6, 7, 9, 17, 21, 24, 34, 35, 36, 41–44. Any of USCM's members could have pressed this case, just as this case's lead plaintiff and many USCM member cities have.[5] Indeed, on USCM's theory of standing, all of its members did just that

---

[5] Some of the EAJA-ineligible USCM member cities pressing litigation on the same FY 2018 grant conditions that USCM purported to litigate on their behalf include New York, New York, *City of New York v. Barr*, 1:18-cv-6474 (S.D.N.Y. filed July 18, 2018), Providence and Central Falls, Rhode Island, *City of Providence v. Barr*, 1:18-cv-437-JJM-LDA (D.R.I. filed Aug. 9, 2018), and San Francisco, California, *City & Cty. of San Francisco v. Barr*, 3:18-cv-5146 (N.D. Cal. filed Aug. 22, 2018). These cities would not be entitled to EAJA fees on their own and USCM should not be permitted to recover for litigating this case on their behalf while they do so on their own behalves.

through the organization. *See supra* Part II.A. USCM's close coordination with its ineligible members further militates against any award, given their apparent influence or control of USCM's litigation decisions. *See Nat'l Ass'n of Mfrs.*, 159 F.3d at 603. Additionally, the same arguments against USCM's eligibility given its representation of ineligible entities apply with equal force to constitute special circumstances that would make any award unjust. *See supra* Part II.A.

Any award would end-run EAJA's purpose, allowing ineligible entities "to take a free ride through the judicial process at the government's expense," *Lee*, 853 F.2d at 1225, and should therefore either be denied or substantially reduced as unjust.[6]

### III. If the Court Finds USCM Entitled to Fees and Expenses, It Should Still Sharply Reduce Any Award Because of the Petition's Deficiencies.

Should the Court decide to award fees and expenses, it still must determine the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A lawful award must comply with EAJA's terms, 28 U.S.C. § 2412(d)(1)(B), (2)(A), and account with the rule that waivers of sovereign immunity "must be strictly construed in favor of the United States," *Ardestani*, 502 U.S. at 137.

Three trends in USCM's records require reducing any award: (A) block-billing, (B) vague entries, and (C) unreasonable or excessive billing. These significant deficiencies total over $150,000, or over 87 percent of the award USCM seeks. Even if the Court disagrees with some of the Government's objections, it should still reduce any award by at least half given the records' overall inadequacies. *See, e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reducing an

---

[6] Alternatively, if the Court determines an award is appropriate, it should still reduce that award to reflect only the time USCM worked on the conditions substantially similar to FY 2017 (the notice, access, and 1373 conditions). Those conditions represent the thrust of USCM's justifications for seeking fees, but only a minimal part of this litigation. Given DOJ's limited argument on those conditions and adherence to the Court's injunction affecting them, the Court could find special circumstances here warrant an equitable reduction of all but the handful of hours USCM spent drawing from existing work product on the conditions.

award by 50 percent because of "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").

### A. Block-Billed Time Should Be Entirely Excluded or at Least Significantly Reduced.

Entering the total daily time spent working on a case, instead of itemizing the time spent on specific tasks (*i.e.*, "block-billing") requires reducing an award when "it prevents the Court from assessing the reasonableness of time spent on each task" or when "it prevents the Court from determining the amount of time spent on compensable versus non-compensable tasks." *Kinney ex rel. NLRB. v. Fed. Sec., Inc.*, 2002 WL 31017644, at *6 n.6 (N.D. Ill. Sept. 9, 2002). What's more, the mere use of block-billing "may increase time by 10% to 30%." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

USCM's fee petition demonstrates the problems with block-billing and warrants excluding any fees submitted in block format. *See Samirah v. Lynch*, 2015 WL 3524790, at *4 (N.D. Ill. June 1, 2015); *NRA v. Vill. of Oak Park*, 871 F. Supp. 2d 781, 791 (N.D. Ill. 2012). Block-billed entries prevent the Court both from distinguishing between compensable and non-compensable tasks and from determining whether the time spent on potentially compensable work was reasonable.

Like *Kinney*, this case involves at least one EAJA-ineligible plaintiff: Evanston. 2002 WL 31017644, at *6 n.6. That Plaintiff is a member of USCM, which litigated this case on behalf of its members. *See supra* Part II.A. It therefore becomes nigh impossible to separate out which work counsel performed only on behalf of USCM and which is non-compensable at the outset. Moreover, USCM's block-billing prevents distinguishing compensable, substantive legal work from clerical tasks or other non-compensable work such as duplicative work discussed below. *See Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) (affirming fee reduction because "the total number of hours attributable to research alone is uncertain; in some instances [the attorney] lists 'research' along with other tasks performed and gives but a single total for the combined work"). Examples of such entries include

— 12 —

the 11/26/2018 entry by "KMO" billing for both legal research and drafting "chart[s] of USCM leadership . . . [and] membership," Haussmann Decl. Ex. A at 21, and numerous vague or excessive entries discussed below, *see infra* Parts III.B–C.

Lengthy block-billed entries also make it impossible for the Court to determine whether counsel spent reasonable time on one task versus another within the same entry. For example, the 6/21/2019 entry by "KMO" bills 6.5 hours for several tasks, including "trade emails with client re today's filings" and "trade emails with M. Masoncup re today's filings." Haussmann Decl. Ex. A. at 41. The Court simply cannot determine what time was actually spent on those tasks—versus four others in the same entry—and whether that time was reasonable.

Thus, the Court is unable to know how much block-billed time includes non-compensable time, includes unreasonable time, or was simply inflated by the practice to begin with. Because of this, the Court should exclude all block-billed time entries, totaling 738.6 hours or $145,210.18. *See Samirah*, 2015 WL 3524790, at *4 ("Here, the Court cannot discern the specific tasks performed in Plaintiff's block billing entries. Thus, the Court, in its discretion, excludes the fees that Plaintiff submitted in block format."). In the alternative, the Court should reduce all block-billed entries by half, amounting to a $72,605.09 reduction. *See Kinney*, 2002 WL 31017644, at *6 n.6. Exhibit A compiles these entries.

## B. Vague Entries Should Be Excluded.

Courts routinely disallow entries that are too vague to verify their reasonableness. *E.g.*, *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (finding inadequate such entries as "legal research," "trial prep," and "met w/ client"); *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (finding entries inadequate "where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed").

USCM's fee petition is replete with inadequate entries. Entries such as "call with client," "direct further action re research," and "confer with [attorney]," Hausmann Decl. Ex. A at 1, 8, 10,

— 13 —

18, 33, 42, 43, make it impossible for the Court to know whether the time expended or task itself was reasonable. Exhibit A compiles such entries, totaling $10,907.76 or 56.1 hours, which should be excluded.[7]

Numerous vague expense entries, such as "Photocopies" and "Online legal research," Hausmann Decl. 57–58 Ex. B at 1–2, should also be excluded. *See Samirah*, 2015 WL 3524790, at *5 (excluding Westlaw research when the court could not discern whether it was expended on compensable subject). These vague entries, totaling $2,795.34, are compiled in Exhibit B.

### C. Excessive or Unreasonable Entries Should Be Excluded.

Courts routinely "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Examples include unreasonable hours spent on straightforward or readymade work product, multiple attorneys billing for the same meeting or work, and billing for merely conveying information to a client.

USCM's redundant time includes 368.8 hours of mostly block-billed entries that include meetings or phone calls for which more than one USCM attorney billed time, including one where four attorneys billed the same time. Haussman Decl. Ex. A at 27; *see Samirah*, 2015 WL 3524790, at *4. Given the overlapping and compounding deficiencies with the petition as a whole, this time should be excluded entirely, but at most, only one attorney's time should be awarded for each of these meetings or calls. Exhibit A compiles these excessive entries as "Redundant."

Many entries are unnecessary and therefore excessive because they include work related to non-legal tasks—*e.g.*, creating or reviewing charts of grant recipients or USCM members. *E.g.*, Haussmann Decl. Ex. A at 3–4, 18, 20–21, 27–28, 36; *see Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989).

---

[7] Most of these vague entries appear in entries that are also block-billed, making it impossible to tell how much time was spent on the vague task(s) within that entry. Thus, if the Court only excludes *some* or no portion of block-billed time, all vague entries should be excluded still. *Samirah*, 2015 WL 3524790, at *4.

Also unnecessary are many of the entries relating to merely transmitting information or updates to the client, *see DiGennaro v. Bowen*, 666 F. Supp. 426, 433 (E.D.N.Y. 1987), communication with attorneys in other cases or tasks relating to those other cases, coordination with EAJA-ineligible Evanston's attorneys, and entries relating to 2017 or 2019 Byrne JAG conditions not at issue in this case, *e.g.*, Haussmann Decl. Ex. A at 36, 43. Time relating to extending the briefing schedule also should be excluded as unreasonable. Exhibit A compiles these excessive entries as "Unnecessary" or "Extension."

To deter overstaffing and wasting judicial or other parties' resources in the future, and to preserve EAJA's purpose, these excessive hours, totaling $100,970.55 or 525.3 hours, should be excluded or at least significantly reduced.[8][9]

## CONCLUSION

For the forgoing reasons, the Court should deny the fee petition in its entirety. In the alternative, it should significantly reduce any award based on the petition's deficiencies.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

*/s/ Charles E.T. Roberts*
Daniel D. Mauler (VA Bar No. 73190)
Charles E.T. Roberts (PA Bar No. 326539)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Phone: (202) 305-8628
Fax: (202) 616-8470
E-Mail: charles.e.roberts@usdoj.gov
*Counsel for Defendant*

---

[8] These excessive entries do not all appear in entries that are block-billed, though most do. Therefore, even if the Court excludes all block-billed entries, there are still entries totaling $6,203.96 or 36.6 hours that are independently unreasonable. Exhibit A indicates in separate columns which entries are block-billed, vague, and otherwise unreasonable.

[9] Finally, any recovery for fees or expenses relating to EAJA recovery itself, *i.e.*, fees on fees, must be reduced in proportion to the amount of the merits fees awarded. *See Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988). Exhibit A also compiles the (mostly block-billed) entries relating to EAJA recovery, totaling $1,958.24, as "Fees on Fees."