```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **CITY OF EVANSTON and THE UNITED STATES CONFERENCE OF MAYORS,** | |
| Plaintiffs, | Case No. 18 C 4853 |
| v. | Judge Harry D. Leinenweber |
| **WILLIAM P. BARR, in his official capacity as Attorney General of the United States,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Plaintiff's Motion for Attorney's Fees and Expenses (Dkt. No. 100) is granted in part and denied in part: Plaintiff is entitled to $97,546.43 in attorney's fees plus the reasonable fees for time spent briefing this Motion and $283.75 in costs and expenses.

### I. BACKGROUND

In addition to the most relevant facts detailed below, the Court incorporates the facts from its earlier rulings. (*See* 8/9/18 Order, Dkt. No. 23; Summary Judgment Opinion, Dkt. No. 93.) Plaintiffs City of Evanston ("Evanston") and the United States Conference of Mayors ("Conference") commenced this action in July 2018, seeking a preliminary injunction to keep the Attorney General

from enforcing certain notice, access, and compliance conditions on the FY 2017 Byrne JAG funds. On August 9, 2018, the Court issued that preliminary injunction. (8/9/18 Order, Dkt. No. 23.) Because the nationwide scope of the injunction was on appeal before the Seventh Circuit in a parallel case, *City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017), the Court stayed the injunction as to the Conference members.

The Seventh Circuit soon lifted that stay, explaining that this case is "fundamentally different" from *City of Chicago* because the injunction here is "limited to parties actually before the court who have demonstrated a right to relief." *See U.S. Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 33 (7th Cir. Aug. 29, 2018). Despite the preliminary injunction, the Attorney General re-imposed the unlawful notice, access, and compliance conditions, along with other unlawful conditions, on the FY 2018 Byrne JAG funds.

In response, Plaintiffs amended their Complaint, moved for summary judgment, and requested a permanent injunction. On September 26, 2019, the Court found for Plaintiffs and issued a permanent injunction against the conditions for FY 2017, 2018, and all future grant years. (*See* Summary Judgment Opinion, Dkt. No. 93.) In the summary judgment motion, Plaintiffs reserved the right to seek reasonable attorney's fees, costs, and expenses. On

October 28, 2019, Plaintiffs filed a fee petition and bill of costs. (Bill of Costs Mot., Dkt. No. 99.) Plaintiffs now seek $172,915.49 plus the reasonable fees for time spent briefing this motion in attorney's fees, $574.00 in costs, and $8,741.10 in expenses.

## II. LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") permits a district court to award fees and other expenses where (1) the claimant was a "prevailing party," (2) the government's position was not "substantially justified," (3) no special circumstances make an award unjust, and (4) the claimant filed a timely and complete application with the district court. 28 U.S.C. § 2412(d)(1)(A); *Tchemkou v. Muskasey*, 517 F.3d 506, 509 (7th Cir. 2008). The claimant bears the burden of establishing eligibility for an EAJA award. *Krecioch v. United States*, 316 F.3d 684, 687 (7th Cir. 2003).

## III. DISCUSSION

### A. Eligibility

The EAJA defines eligible parties to exclude entities, except 501(c)(3) organizations, that exceed $7,000,000 net worth or 500 employees at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B)(ii). The Conference was a 501(c)(3) organization with fewer than 500 employees at the time it filed this lawsuit.

(Cochran Decl. ¶¶ 4-5, Pl.'s Mot., Ex. 1, Dkt. No. 100-1.) Nevertheless, the Government argues the Conference is ineligible.

First, the Government argues the Conference is ineligible because it is not a real party in interest. As the Conference notes, "the real party in interest test [is disfavored] because that test contradicts the plain language of the EAJA." (Reply at 5, Dkt. No. 111 (citing *Nail v. Martinez*, 391 F.3d 678, 684–85 (5th Cir. 2004).) But even if the real party in interest test applied, the Conference passes. The real party in interest doctrine bars fee awards "from which only ineligible parties would benefit." *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 603 (D.C. Cir. 1998). "[T]he essential question . . . is whether there is some relationship or agreement among all or some of the various plaintiffs, either explicit or implicit, permitting a plaintiff, which would 'obviously not qualif[y] for an award, . . . [to] receive free legal services if its side were to prevail.'" *Id.* (citing *AARP v. EEOC*, 873 F.2d 402, 405 (D.C. Cir. 1989)). In a case with several plaintiffs where only one plaintiff is liable for attorney's fees, the liable party is the real party in interest. *Unification Church v. INS*, 762 F.2d 1077, 1081–83 (D.C. Cir. 1985); *see also Nat'l Ass'n of Mfrs.*, 159 F.3d at 604–05.

Here, the Conference is responsible for the fees and expenses it seeks, and the Conference controlled this litigation. (*See*

Cochran Decl. ¶¶ 6-8; Joint Stipulation ¶¶ 3-4 & 9, Status Report, Ex. 1, Dkt. No. 74-1.) *See Nat'l Ass'n of Mfrs.*, 159 F.3d at 603 (members could be real parties in interest only if liable for fees or if controlled litigation); *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1996) (holding that individual members are real parties in interest only if liable for association's attorney's fees). Notably, the Government offers no credible evidence to the contrary. The fact that the litigation benefits EAJA-ineligible members or that Evanston was a co-plaintiff is not evidence of an ineligible party receiving free legal services or controlling the litigation. Therefore, the Conference is a party in interest.

Second, the Government argues the Conference is ineligible because it serves as an organizational shell that seeks to circumvent the net worth requirements on behalf of its EAJA-ineligible municipal members. In support, the Government emphasizes that the Conference sued on its members' behalf through associational standing. (Resp. at 6 ("The Conference vigorously argued that it stood in the shoes of its members for standing purposes. It must live with that result now.").) Essentially, the Government argues that the Conference's EAJA eligibility hinges on the size and net worth of its constituent members.

Most courts flat-out reject this argument. *See, e.g.*, *Nat'l Ass'n of Mfrs.*, 159 F.3d at 600-02 (finding the statute's plain

language and legislative history demonstrate Congress's intent to place "eligibility ceilings on the association itself"); *Love*, 924 F.2d at 1494 (holding that, where an association is a legitimate party with standing in litigation, the fact that an ineligible constituent member benefitted from the litigation does not preclude an EAJA fee award to the association); *Texas Food Indus. Ass'n v. Dep't of Agric.*, 81 F.3d 578, 581–82 (5th Cir. 1996) (concluding the "statute's plain language provides no basis for the aggregation requirement"); *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 701 (Fed. Cl. 2010) (siding with the Fifth, Ninth, and District of Columbia Circuits in finding that the statutory language "unambiguously contemplates that it is the association alone that must satisfy the standards for eligibility, not also its constituent members as an aggregate group"). This Court agrees with the majority—Section 2412(d)(2)(B)(ii)'s plain language provides no basis for an aggregation requirement. The Conference is eligible for fees under EAJA.

### B.  EAJA Analysis

It is undisputed that the Conference filed a timely application and is the prevailing party. Accordingly, the Court will focus its analysis on the two contested elements: (1) whether there are any special circumstances that would make an award

unjust; and (2) whether the government's position was substantially justified.

First, the "special circumstances" exception gives the court discretion to deny an EAJA award where equitable. *See* H.R. Rep. No. 96-1418 at 11 (1980) (characterizing the exception as a "safety valve"). As with substantial justification, it is the Government's responsibility to establish special circumstances. The Government's argument for special circumstances is puzzling and merely reiterates the same arguments made on eligibility. Essentially, the Government argues that Evanston's participation in the litigation amounts to controlling it and that special circumstances exist because other Conference municipality members could individually challenge the conditions. There is no evidence that Evanston or any of the Conference's other municipality members controlled the litigation or that any municipality member is freeloading at the Government's expense. Thus, no special circumstances exist that would render an award unjust.

Second, the Government bears the burden of proving that its position was substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The government's position is substantially justified if it has a reasonable basis in fact and law and if there if a reasonable connection between the facts and the legal theory. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir.

2009). "EAJA fees may be awarded if either the government's pre-litigation conduct or its litigation position are not substantially justified." *Golembiewski*, 382 F.3d at 724 (citations omitted). When evaluating the government's position, courts consider several factors, including whether the case survived summary judgment, whether the court used "strong language" when discussing the merits of the government's position, and whether the court affirmed or adopted any of the government's positions. *Id.* at 724–25. No factor singularly mandates a finding of attorney's fees. *Hallmark v. Constr. Co.*, 200 F.3d 1076, 1079–80 (7th Cir. 2000). Finally, an initially reasonable position may become unreasonable if the Government pursues an "unsupportable" claim. *Quality C.A.T.V., Inc. v. NLRB*, 969 F.2d 541, 545 (7th Cir. 1992).

The Court finds the Government's position substantially justified when it initially litigated the FY 2017 Byrne JAG grant conditions. But, that position obviously became unreasonable when the Government attached those same conditions, along with several new unlawful conditions, to the FY 2018 Byrne JAG grants. When Plaintiffs filed this lawsuit in July 2018, they sought an injunction to prevent the Attorney General from imposing certain notice, access, and compliance conditions on the FY 2017 Byrne JAG grants. On August 9, 2018, the Court issued a preliminary

injunction prohibiting the imposition and enforcement of those conditions against Evanston and the Conference's other members. At the time, the Attorney General had imposed a rapid deadline by which Conference members had to agree to the three unlawful conditions or forgo their FY 2017 awards. Accordingly, the Court issued the preliminary injunction to cover both Evanston and those Conference members facing an "accept or decline" deadline. However, because the nationwide scope of the injunction was on appeal before the Seventh Circuit in a parallel case, *City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017), the Court stayed the injunction as to the Conference members.

The Seventh Circuit soon lifted that stay and explained that this case is "fundamentally different" than *City of Chicago* because the injunction in this case is "limited to parties actually before the court who have demonstrated a right to relief." *See U.S. Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 33 (7th Cir. Aug. 29, 2018). After the Seventh Circuit's Order, the preliminary injunction prohibited the Attorney General from imposing the notice, access, and compliance conditions on the FY 2017 Byrne JAG grants for Evanston and any Conference members that faced an accept or decline deadline. Despite the Court's clear rejection of its position, the Attorney General then re-imposed

- 9 -

the unlawful notice, access, and compliance conditions, along with other unlawful conditions, on the FY 2018 Byrne JAG funds.

At this point, the Government's position was unreasonable. The Court granted a preliminary injunction, a permanent injunction, and declaratory relief against the Attorney General to prevent the imposition of the contested conditions. (*See* Summary Judgment Opinion, Dkt. No. 93 at 15, 24, 32; Final Judgment, Dkt. No. 94.) Yet, the Attorney General re-imposed the preliminarily enjoined conditions for FY 2017 on the FY 2018 Byrne JAG funds, and then imposed similar conditions on FY 2019 Byrne JAG funds. The Government argues that it did not re-impose the conditions because it did not enforce them against jurisdictions with an injunction. Nevertheless, the threat of enforcement persisted. (*See, e.g.*, Dkt. No. 78-1, Ex. D, a BJA website as of February 26, 2019 stating that the government would not enforce the unlawful FY 2017 and FY 2018 conditions, but that non-enforcement decision was subject to change pending litigation outcomes.) The Government's re-imposition argument is further belied by the fact that it continued to litigate the unlawful conditions rather than withdrawing them after they were rejected.

This Court and the Seventh Circuit explicitly rejected the Government's rationale for the FY 2017 conditions. *See City of Chicago*, 888 F.3d at 290–91; *City of Chicago*, 321 F. Supp. 3d at

873–76 & 881. Even so, the Government relied upon that same rationale to impose the FY 2018 conditions and FY 2019 conditions. Repeating and attempting to re-litigate previously rejected positions is not reasonable or appropriate. *See Murphy v. Colvin*, No. 10 C 607, 2013 WL 62535327, at *6 (N.D. Ill. Dec. 2, 2013) (concluding the government's position was not substantially justified and noting that the government's litigation positions had been "repeatedly and emphatically" rejected).

This Court does not stand alone in its rejection of the Government's position and actions. *See, e.g.*, *City of Providence v. Barr*, No. 19-1802, 2020 WL 1429579, at *17 (1st Cir. Mar. 24, 2020) (affirming injunction against notice, access, and compliance conditions and writ of mandamus in aid of the injunction); *City of Philadelphia v. Att'y Gen. of U.S.*, 916 F.3d 276, 293 (3d Cir. 2019) (affirming permanent injunction against notice, access, and compliance conditions); *City of Chicago v. Sessions*, 888 F.3d 272, 293 (7th Cir. 2018) (affirming preliminary injunction against notice and access conditions); *City & County of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 953 (N.D. Cal. 2019) (permanently enjoining notice, access, compliance, harboring, and questionnaire conditions); *City of Los Angeles v. Sessions*, No. 18-7347, 2019 WL 1957966, at *4–*5 (C.D. Cal. Feb. 15, 2019) (same); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 934 (N.D. Cal.

2018) (permanently enjoining notice, access, and compliance conditions); *Illinois v. Sessions*, No. 18-4791, Dkt. No. 25 (N.D. Ill. Sept. 26, 2018) (permanently enjoining notice, access, and compliance conditions); *City of Los Angeles v. Sessions*, No. 17-7215, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018) (preliminarily enjoining notice and access conditions); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 879 (N.D. Ill. 2018) (permanently enjoining notice, access, and compliance conditions).

Further, this Court used strong language against the Government's position when discussing the merits of key issues. *See Golembiewski*, 382 F.3d at 724 ("Strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees."). When it granted a preliminary injunction, the Court noted that the Government's argument was "substantially the same" as the one rejected in *City of Chicago* and that such an "untenable" position would not work here. (8/9/18 Order at 8.) Indeed, throughout this litigation the Court explicitly and repeatedly referenced its analysis and reasoning against the Government in the parallel *City of Chicago* case.

For example, when it granted a permanent injunction, the Court referred to the Government's "track record" and "willingness to impose unlawful conditions in the next round of Byrne JAG program

administration, despite an injunction prohibiting those same conditions in the previous year." (*See* Summary Judgment Opinion at 28 (citing *City of Chicago*, 2019 WL 4511546, at *16); *see also id.* at *13 ("Defendant is not free to disregard the Seventh Circuit's rulings in its briefings before this Court.").) When it rejected the Government's argument that 34 U.S.C. § 10102(a)(6) authorizes the challenged conditions, the Court also stated that "the Seventh Circuit has roundly rejected this provision as an independent source of authority for the Attorney General to create grant conditions." (Summary Judgment Opinion at 17.)

The Court warned that the "lawyers would get paid" if the Government continued to impose the conditions. (*City of Chicago* 8/15/18 Tr. at 4:2-11, 5:4-9, 6:4-13, Pl.'s Mot., Ex. 2, Dkt. No. 100-2.) Yet, the Government's continued imposition of the rejected conditions forced Plaintiffs into another lawsuit. The EAJA supports an award starting with the FY 2018 conditions litigation. Therefore, the Conference is entitled to an award beginning with its work on the Amended Complaint (Dkt. No. 46) up through this Motion.

### C. EAJA Award

#### *1. Fees*

Finding the Conference meets the requirements for an EAJA award beginning from the work performed on the Amended Complaint,

the Court determines the appropriate amount of that award. An EAJA fee "is calculated by multiplying the number of hours reasonably expended on the case by the attorney's reasonable hourly rate." *Fricano v. Colvin*, No. 12 C 4353, 2014 WL 2068415, at *1 (N.D. Ill. May 19, 2014) (citing *Comm'r of Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154, 161 (1990)). To determine whether a fee is reasonable, courts consider "the time, labor, and level of skill required by the case, among other factors, such as the overall complexity of the matter, the amount at stake, the result obtained, awards in similar cases, and the attorney's experience, ability, and reputation." *Fricano*, 2014 WL 2068415, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

The Conference seeks attorney's fees based on an hourly rate of $201.70 per hour for work performed in 2018 and of $202.08 per hour for work performed in 2019. To adjust the hourly EAJA rate of $125.00 for cost of living based on the CPI-U, the Conference uses a well-accepted formula. *See Sprinkle v. Colvin*, 777 F.3d 421, 428 (7th Cir. 2015) (stating that petitioner must prove an increase in the cost of living and show that the increase in the cost of living justifies the requested rate). The Conference also seeks fees for paralegal work at an hourly rate of $90.00 per hour.

The Government does not dispute the Conference's requested rates. Rather, the Government seeks to reduce the Conference's

overall amount of recoverable time. The Government objects to most of the Conference's time entries because of three perceived deficiencies: (1) block billing; (2) vague entries; and (3) unreasonable or excessive billing. (*See* Resp. at Ex. A.) Ultimately, the key inquiry is whether the Conference's time entries provide sufficient detail to allow the Court to conclude that counsel's time was "reasonably expended." *Tchemkou*, 517 F.3d at 510-11. The Court concludes that the Conference's time entries serve that purpose.

Block billing is not a prohibited practice. *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). Unlike the cases cited by the Government, the Conference's time entries do not include non-compensable tasks for a separate matter, time spent working for fee-ineligible clients, or time spent on tasks also performed by another firm. Thus, the Government's case comparisons advising against block billing are inapposite. Further, the Conference's counsel avers to excluding unrecoverable, excessive, or duplicative time, accounting for any potential block billing concerns. (Haussmann Decl. ¶¶ 24, 26.) Indeed, counsel's review reduced the hours the Conference seeks to recover from the total hours spent on the litigation by 19%. (*Id.*) The Government's arguments that many of the Conference's time entries are vague similarly falls flat. Read in conjunction with

other time entries from the same dates and the Haussmann Declaration, the Court finds the Conference's descriptions do not pose any roadblock to evaluating reasonableness.

Additionally, time billed by multiple attorneys for the same meeting or for working on the same brief is not automatically considered excessive, redundant, or otherwise unnecessary. Such a blanket rule would be "totally unrealistic." *Tchemkou*, 517 F.3d at 511. "The practice of law often, indeed usually, involves significant periods of consultation among counsel." *Id.* And, "[t]here is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). Generally, "[t]alking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney trying to wade through an issue alone." *Tchemkou*, 517 F.3d at 511–12. The Government marks several time entries as redundant simply because another attorney also bills for the same meeting, conference call, or work on the same document. Where, as here, time entries provide sufficient detail to identify the subject matter of the discussion, attorney time spent on conference calls, internal meetings, and working on the same document is "reasonably expended" and recoverable.

The Government also argues that many of the entries are unnecessary as "non-legal tasks" or because they record time spent communicating with the client, communicating with attorneys in related cases, coordinating with the co-plaintiff, or performing tasks related to Byrne JAG conditions for years other than 2018. (Resp. at 16.) The Government does not explain why such entries are unnecessary nor how tasks such as creating charts of Byrne JAG grant recipients and Conference members are non-legal. Notably, the Government also fails to cite relevant controlling authority that says as much. Such unsupported conclusions are not persuasive. Considering the factual and legal context and complexity of this case, the Court finds such time reasonably expended and recoverable.

The Conference seeks $172,915.49 in fees plus the reasonable fees for time spent briefing this Motion. Because the Court finds the Government's position substantially justified up through the FY 2017 conditions litigation, the Court awards only those costs incurred starting from October 13, 2018—the date upon which the first-time entry detailing work on the Amended Complaint appears, triggering the start of the FY 2018 conditions litigation—onward. Thus, the Court awards $97,546.43 in fees plus the reasonable fees for time spent briefing this Motion.

### 2. *Costs*

In addition to attorney's fees, the Conference seeks recovery of certain costs pursuant to 28 U.S.C. § 1920. *See also* 28 U.S.C. §§ 2412(a)(1) & (d)(1)(A). Generally, costs include the taxable costs set forth in § 1920, including fees to the clerk, fees for service of summons, and transcript fees. *Id.* § 2412(a)(1). The Seventh Circuit has interpreted § 1920 to also "include amounts spent on filing fees, postage, telephone calls and delivery charges and has held that costs of computerized legal research are recoverable as part of an attorney-fee award." *Tchemkou*, 517 F.3d at 512–13 (internal citations omitted).

On October 28, 2019, the Conference filed a bill of costs seeking $574.00 in costs. (*See* Bill of Costs, Dkt. No. 99.) For the reasons previously stated, the Court awards only those costs incurred from October 13, 2018 onward. Thus, the Court awards $49.05 for the one item dated after October 13, 2018—the court reporter fee charged on March 18, 2019 for an original copy of the February 14, 2019 hearing transcript. The Conference also seeks to recover $8,741.10 for three other types of expenses: legal research, copies, and PACER charges. The Government does not object to the PACER charges but does object to all the copy and some of the legal research expenses as vague. (*See* Resp. at Ex. B.)

First, the Government's vagueness objection to the Conference's copy expenses is well-taken. The Conference's description of "Photocopies" for each copy expense leaves much to be desired, including what was copied, for what purpose, in what quantity, and for what price. *See Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, No. 02-cv-5893, 2014 WL 1097471, at *4 (N.D. Ill. March 20, 2014) (denying recovery for insufficiently described copying costs while authorizing recovery for other sufficiently described copying costs). The Court is unable to make a finding as to necessity and cannot authorize these expenses. Thus, the Conference is not entitled to recover copy expenses.

Second, legal research expenses are folded into the attorney fee award. Neither party acknowledges the "significant Seventh Circuit authority providing that computerized legal research costs are only recoverable as part of an attorney fee award, rather than as costs of suit." *Thomas v. City of Peoria*, No. 06-cv-1018, 2009 WL 4591084, at *2 (C.D. Ill. Dec. 3, 2009) (citing *Tchemkou*, 517 F.3d at 512–13 (7th Cir. 2008); *Haroco, Inc. v. Am. Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440–41 (7th Cir. 1994); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990)). The Seventh Circuit explains that, in these circumstances, "computerized research is properly categorized as attorney's fees because the expense is incurred to save the attorney the time that

otherwise would be spent in a law library." *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2011 WL 941188, at *5 (N.D. Ill. Mar. 16, 2011) (citing *Haroco*, 38 F.3d at 1440–41). The Conference cannot recover legal research as a cost or expense. Accordingly, the Court awards the Conference its PACER charges incurred from October 13, 2018 onward, amounting to $234.70. Adding the previously awarded transcript charge of $49.05 from the bill of costs, the Conference is entitled to a total recovery of $283.75 for costs and expenses.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Attorney's Fees and Expenses (Dkt. No. 100) is granted in part and denied in part. Plaintiff is entitled to $97,546.43 in attorney's fees plus the reasonable fees for time spent briefing this Motion and $283.75 in costs and expenses.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　United States District Court

Dated: 4/23/2020