IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CITY OF EVANSTON and THE UNITED STATES CONFERENCE OF MAYORS,** <br><br> Plaintiffs, <br><br> v. <br><br> **WILLIAM P. BARR, in his official capacity as Attorney General of the United States,** <br><br> Defendant. | Case No. 18 C 4853 <br><br> Judge Harry D. Leinenweber |

# ORDER

For the reasons stated herein, the Court revises the Conference's fee award as follows: the initial $97,546.43 fee award is supplemented by $21,953.38. Accordingly, the Conference is awarded $119,499.81 in fees and $283.75 in costs and expenses to be paid directly to the Conference's counsel.

# STATEMENT

On September 26, 2019, the Court entered a final judgment and order in the Conference's favor. (Dkt. No. 94.) The Conference then filed its motion for attorney's fees and expenses on October 29, 2019. (Dkt. No. 100.) Meanwhile, on November 25, 2019, the Attorney General filed a notice of appeal as to the final judgment and order. (Dkt. No. 103.) On April 23, 2020, the Court awarded the Conference $97,546.43 in fees plus reasonable fees for time spent briefing its motion and $283.75 in costs and expenses. *See generally City of Evanston v. Barr*, 2020 WL 1954142 (N.D. Ill. Apr. 23, 2020). On May 12, 2020, the Court supplemented the Conference's fee award by $21,953.39. (Order, Dkt. No. 128.) On June 2, 2020, the Attorney General moved the Court to reconsider the fee award supplement. The Court granted that motion to reconsider and revises the

Order as follows. Since then, the Attorney General noticed a second appeal on the original fee award. (Dkt. No. 133.)

As an initial matter, the Attorney General claims that the Conference has not truly prevailed and that a fee award is unauthorized at present. (Resp. at 2, Dkt. No. 130-1.) The Court rejected this argument in deciding the original fee award and rejects it again here. *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993) (holding that application for fees under the EAJA was timely even though the district court's judgment was still appealable); *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991) (declining to address whether a district court must refuse to entertain a premature fee application); *Animal Lovers Volunteer Ass'n Inc. v. Carlucci*, 867 F.2d 1224, 1225 (9th Cir. 1989) ("Government is mistaken in its view that fees may not be awarded until appellants win a judgment which 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' The fact the dispute between the parties may continue does not preclude a fee award."); *Aarda v. U.S. Citizenship & Immigration Servs.*, No. CIV 06-1561 RHK/AJB, 2008 WL 974916, at *2–*3 (D. Minn. Apr. 8, 2008) (noting that the "legislative history of the EAJA confirms that Congress intended to authorize district courts to act on fee applications filed before judgments become 'final' under the EAJA") (citing H.R. Rep. No. 99-120(I), at 18 n.26 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 146 n.26 ("Fee petitions may be filed before a 'final judgment.'") & *McDonald v. Schweiker*, 726 F.2d 311, 314 (7th Cir. 1983) ("The legislative history indicates . . . that the 30-day provision in the Act was meant to establish a deadline, not a starting point.")); *League for Coastal Prot. v. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911, at *3–*4 (N.D. Cal. Dec. 22, 2006) (finding where district court has entered final judgment and only the circuit court appeal is pending, attorney's fees may be granted); *Bullfrog Films, Inc. v. Catto*, 815 F. Supp. 338, 341 (C.D. Cal. 1993) ("[I]t is well-settled in this Circuit that a final judgment is not a prerequisite to an award of fees under the EAJA."); *Cervantez v. Sullivan*, 739 F. Supp. 517, 520-21 (E.D. Cal. 1990) (finding the court could and indeed would consider an EAJA fee petition while an appeal is pending) (citing *McDonald v.*

*Schweiker*, 726 F.2d 311 (7th Cir. 1983)). Even with the Attorney General's now double pending appeals, the Court is permitted to consider the Conference's fee petition.

The Attorney General advances three main arguments against the Conference's proposed fee award supplement. First, the Attorney General argues that the fee award supplement amount the Conference seeks is excessive and should be reduced to an amount comparable to fees on fees awards in other cases. Alternatively, the Attorney General argues the Court should reduce the fee award supplement in proportion to the Court's reduction of the merits-based litigation fees based on its substantial justification analysis. Finally, the Attorney General argues that specific deficiencies, like block billing and non-legal tasks, independently warrant exclusion. The Court rejects these arguments as follows.

The Attorney General argues that the amount the Conference seeks in the fee award supplement is not proportional. The Court disagrees. "[T]he relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). An award of fees for hours devoted to an EAJA fee petition must be reasonable. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990); *see also* 28 U.S.C. § 2413(a). One factor the district court, in its discretion, considers to determine reasonableness of an award for time spent on fee litigation is "the comparison between the hours spent on the merits and the hours spent on the fee petition[ ]." *Spegon*, 175 F.3d at 554. Other considerations "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

To support its view, the Attorney General calculates that the Conference spent about 14 minutes on fees for every hour awarded for litigation the merits. (Resp. at 4.) This calculation is based on 493.30 hours spent on the merits and over 110 hours spent on fees. (*Id.*) This ratio is skewed, however, because it ignores the approximately 388.40

hours' worth of work the Conference spent litigating the merits prior to the Amended Complaint. (*See* Pet. Haussmann Decl., Ex. A at 11–26, Dkt. No. 100-3.) The Attorney General does not provide, nor was this Court able to find, authority that requires the analysis be relative to the hours actually recovered under the EAJA as opposed to the reasonable total hours spent litigating the case. It is the Court's view that when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "Normally this will encompass *all hours* reasonably expended on the litigation . . . ." *Id.* (emphasis added). Notably, despite finding the Government's position substantially justified up to a certain point in the litigation, the Court never found, nor was it required to find, that the Conference was unreasonable.

Thus, the Court performs its proportionality analysis by comparing the total number of hours the Conference reasonably spent litigating the merits to the number of hours spent on the fee petition. The time reasonably spent litigating the merits of this complex case includes the 388.40 hours spent on the litigation before the Amended Complaint. Therefore, the Conference spent about 881.70 hours reasonably litigating the merits of this case, not 493.30. When the Court compares that total to the time spent on the fee petition, it amounts to approximately 7.75 minutes for every hour spent on the merits.

The Court considers the Attorney General's contention that the Conference was awarded 7.60 hours' worth of supplemental fees in the initial award when it calculates this ratio. (Resp. at 3 n.2.) The Attorney General reached 7.60 hours by adding the entirety of certain time entries awarded in the Conference's initial petition that contain some time for tasks that appear related to the fee petition. The Court notes that, at most, the Conference was awarded 6.50 hours' worth of time related to the fee petition in the initial award. (Haussmann Decl., Ex. A at 8, Dkt. No. 127-1 (indicating that only 1.90 hours of the total 3.00 hours claimed for 9/30/19 related to the fee petition); Pet. Haussmann Decl., Ex. A at 30 & 54 (11/19/18 time entry totaling 3.00 hours where some portion of the time was spent researching EAJA

attorney's fees & 9/26/19 time entry totaling 1.60 hours where some portion of the time was spent researching the fee petition statute).) The Court accounts for this by adding 6.50 hours to the Conference's 107.40 hours ask, totaling 113.90 hours for work on the fee petition, and comparing that to a total of 881.70 hours spent reasonably litigating the merits. This equals about 7.75 minutes spent on the fee petition for every hour spent reasonably litigating the merits. The ratio changes little when the Court uses the Attorney General's 7.60 hours instead of 6.50 hours, amounting to 7.83 minutes spent on the fee petition for every hour spent reasonably litigating the merits.

  The award is reasonable. The Conference prevailed at every turn in this litigation: obtaining a preliminary injunction, surviving a motion to dismiss, obtaining a permanent injunction, and, ultimately, prevailing on summary judgment. *But see Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988) (analyzing fee petition for partially prevailing plaintiff in civil rights action). Further, the Conference's request is not extreme in either direction—excessively seeking time spent on the fee petition equal to time spent litigating the merits or seeking the smallest request on the fee petition a court has ever seen. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 403 (7th Cir. 1999) (analyzing fee petition under Fair Labor Standards Act where attorneys spent just under 100 hours litigating the merits and court awarded 1.60 for work on fee petition); *Spegon*, 175 F.3d at 550 (analyzing fee petition under Fair Labor Standards Act where time spent on fee petition essentially equals time spent litigating the merits); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) (awarding 1.60 hours for work on fee petition where attorneys spent about 140 hours litigating the merits); *Ozinga v. U.S. Dep't of Health and Human Servs.*, Case No. 13-3292, 2018 WL 2320933, at *2 (N.D. Ill. May 22, 2018) (analyzing fee petition under 42 U.S.C. § 1988 where time spent on fee petition essentially equals time spent litigating the merits). Therefore, considering the full number of hours spent litigating the merits, the Conference's exercise of billing judgment and voluntary reduction of the hours sought (Haussmann Decl. ¶¶ 19–22), and the Conference's repeated success on the merits in this

complex and protracted litigation, the supplement to the fee award is reasonable and proportional.

The award also comports with controlling precedent. In *Quality C.A.T.V., Inc. v. NLRB*, the Seventh Circuit addressed an EAJA petition in a labor lawsuit between the NLRB and a small cable company, Quality. 969 F.2d 541, 545 (7th Cir. 1992). As here, the court found the NLRB's position substantially justified up to a certain point in the litigation. *Id.* This meant Quality could recover its fees and costs from that point forward. *Id.* The court then determined that Quality was entitled to recover its fees and costs in seeking the EAJA fee award, specifically noting that the substantial justification analysis plays no role in the availability of an award to cover the fee litigation itself. *Id.* at 547 ("[S]ubstantial justification plays no role in determining the availability of an award to cover EAJA fee litigation itself, which is treated as a component part of an integrated case; hence, a prevailing party is presumptively entitled to an award that includes costs associated with fee litigation." (citing *Jean*, 496 U.S. at 161 ("Absent unreasonable dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil litigation."))).

The Seventh Circuit's conclusion that substantial justification has no role in the fee litigation portion of the case advances the judiciary's interest in reducing the heavy burden of fee litigation. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."); *Ustrak*, 851 F.2d at 987 (fee litigation "can turn a simple civil case into two or even more cases—the case on the merits, the case for fees, the case for fees on appeal, the case for fees for proving fees, and so on ad infinitum, or at least ad nauseam.") The Court keeps this same interest in mind when it considers the Attorney General's alternative argument.

Specifically, the Attorney General argues that the Court's denial of a substantial portion of the Conference's requested fees warrants a proportionate reduction to the fee award supplement. (*See* Resp. at 5

("Therefore, USCM 'has failed to prevail' on a significant portion of its fee claim, 'the hours spent on the unsuccessful claim should be excluded.'") (citing *Hensley*, 461 U.S. at 440).) This is a stretch. In *Hensley*, the Supreme Court analyzed a fee award in a civil rights action where the plaintiff achieved only partial success on the merits. *Hensley*, 461 U.S. at 436 & 438–40. The Supreme Court held, "that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id.* at 440; *see also id.* at 435 ("The result is what matters.") The success and results the Supreme Court refers to are the success and results in the merits-based litigation–not in the fee litigation itself. To extend this holding as the Attorney General suggests would only add to the arsenal of parties seeking to prolong fee litigation. The Court refuses to do this. And, because the Conference fully prevailed on the merits, the Court will not reduce the supplemental fee award for this reason.

Finally, the Attorney General argues that specific time entries suffer from deficiencies like block billing and charging for non-legal tasks that independently warrant exclusion. Although labeled as an argument against block billing, the Attorney General merely repackages its argument for a reduced award because the Conference was not awarded its full ask on the initial fee petition. (*See* Resp. at 7 ("USCM's Supplement seeks fees on fees for its entire motion for fees and expenses, even though this Court found approximately half of that time and nearly all of those costs and expenses unrecoverable. The supplemental records provide no basis for distinguishing between compensable and non-compensable time in any entry . . . .").) The Court already entertained and rejected this argument. It declines to revisit it here, especially when the Court reviewed the Conference's time entries and found them sufficiently detailed to conclude that counsel's time was "reasonably expended." *Tchemkou v. Mukasey*, 517 F.3d 506, 510–11 (7th Cir. 2008).

The Attorney General also reiterates its argument that the Conference bills for non-legal or easily delegable tasks, including "drafting and revising the chart of time entries, calculating updated

- 7 -

billing rates based on inflation, contacting the courtroom deputy about calendaring, sending courtesy copies, and cite-checking." (Resp. at 7.) The Court notes that time the Conference recorded for courtesy copies and communications with the courtroom deputy was listed as zero. (*See* Resp., Ex. A at 13, Dkt. No. 130-1 ("call deputy to confirm the motion does not need to be noticed for presentment since we have a briefing schedule (0.0)" & "direct filing and sending of courtesy copies (0.0)").) Thus, the Court declines to discuss those tasks.

As for editing time entries, calculating billing rates, and revising citations, the Attorney General emphasizes an apparent "finding" by the Supreme Court "that 'compilation of facts and statistics' is non-legal work." (Resp. at 7 & n.5 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)).) This is misleading. The cited authority is a dictum footnote wherein the Supreme Court discusses the challenges of delegating certain "gray area" tasks amongst attorneys, paralegals, and clerical staff. *Id.* To present this as controlling authority that requires this Court to find that certain tasks are non-legal, and therefore unrecoverable under the EAJA, is absurd.

Even if this dictum was controlling, the Court does not award fees on the merits-based litigation or on the fee petition for the mere "compilation of facts and statistics." *Id.* In the initial award, the Conference recovered fees for some time that the Attorney General characterized as "unnecessary" and "non-legal." (Pet. Resp. at 16, Dkt. No. 109.) As the time entries establish, however, the specific tasks performed were reasonably necessary to prove the Conference's claims in the litigation. (*See generally* Pet. Haussmann Decl., Ex. A at 26–55.) None of the time awarded was for purely clerical or administrative work. (*See id.*) Further, the Conference demonstrated "cost-effective delivery of legal services," through delegation to a paralegal when possible. *Missouri*, 491 U.S. at 288. (*See* Pet. Haussmann Decl., Ex. A at 37–39.)

It is true that tasks related to billing, in general, are administrative. But in seeking fees for work on the fee petition, the Conference's attorneys reviewed and edited invoices and calculated billing rates to prove up a legal entitlement. The time entries and

billing rate are at the heart of what the Court is being asked to decide here—what fees and costs is the Conference legally entitled to recover under the EAJA? Indeed, these tasks are the same tasks the Court performs to decide what fees are legally recoverable. In these circumstances, such tasks are legal.

For the foregoing reasons, the Court revises the Conference's fee award as follows: The initial $97,546.43 fee award is supplemented by $21,953.38. Accordingly, the Conference is awarded a total of $119,499.81 in fees and $283.75 in costs and expenses to be paid directly to the Conference's counsel.

                                                Harry D. Leinenweber, Judge
                                                United States District Court

Dated: 7/2/2020